```
1   Nathan K. Low (SBN 299587)
    E-Mail: nlow@fisherphillips.com
2   Elizabeth T. Ferguson (SBN 318934)
    E-Mail: etferguson@fisherphillips.com
3   FISHER & PHILLIPS LLP
    1 Montgomery Street, Suite 3400
4   San Francisco, California 94104
    Telephone: (415) 490-9000
5   Facsimile: (415) 490-9001

6   Attorneys for Defendant
    WAYFAIR LLC
7
```

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED JOSEPH KORPIE, an individual and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAYFAIR, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br>(Removed from Los Angeles County Superior Court, Case No. 25STCV32611)<br><br>**DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION PURSUANT TO 28. U.S.C. §§ 1332 (D)(2) AND (5)**<br><br>Complaint Filed:   November 5, 2025<br>Removal:           January 2, 2026<br>Trial Date:        Not Set |

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY .................................................................................. 1

II. TIMELINESS OF REMOVAL ............................................................................ 2

III. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF .............................. 2

IV. REMOVAL IS BASED ON CAFA JURISDICTION ........................................... 3

    A. Size of the Class ....................................................................................... 3

    B. Minimal Diversity ..................................................................................... 3

    C. Amount in Controversy ............................................................................ 5

    D. Baseline Facts ........................................................................................... 5

    E. Minimum Wage Claims ............................................................................ 6

    F. Overtime Claims ....................................................................................... 7

    G. Meal Period Claims .................................................................................. 8

    H. Rest Period Claims ................................................................................... 9

    I. Waiting Time Penalties ........................................................................... 10

    J. Wage Statement Penalties ...................................................................... 11

    K. Untimely Wage Payments ...................................................................... 12

    L. Illegal Quota and Reimbursement Claims ............................................. 13

    M. Attorney's Fees ....................................................................................... 13

    N. Conclusion on Amount in Controversy .................................................. 14

V. VENUE ............................................................................................................. 14

VI. SERVICE OF NOTICE OF REMOVAL ON STATE COURT .......................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alfaro v. Banter by Piercing Pagoda*,
　No. SACV 22-00266-CJC(ADSx), 2022 WL 1284823, *3 (C.D. Cal. Apr. 29, 2022) .. 9

*Chavez v. JPMorgan Chase & Co.*,
　888 F.3d 413, 414-15 (9th Cir. 2018) ................................................................... 13

*Cohn v. Petsmart, Inc.*,
　281 F.3d 837, 839-840 (9th Cir. 2002) ................................................................... 5

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
　574 U.S. 81, 89 (2014) ............................................................................................ 5

*Evers v. La-Z-Boy Inc.*,
　No. 21CV2100-LL-BLM, 2022 WL 2966301, (S.D. Cal. Jul. 27, 2022) ................ 6

*Galt G/S v. JSS Scandinavia*,
　142 F.3d 1150, 1155-56 (9th Cir. 1998) ............................................................... 13

*Ibarra v. Manheim Investments, Inc.*,
　775 F.3d 1193, 1197 (9th Cir. 2015) ....................................................................... 5

*Kanter v. Warnter-Lambert Co.*,
　265 F.3d 853, 857 (9th Cir. 2001) ........................................................................... 3

*Kantor v. Wellesley Galleries, Ltd.*,
　704 F.2d 1088, 1090 (9th Cir. 1983) ....................................................................... 3

*La Grow v. JetBlue Airways Corp.*,
　No. 2:24-cv-00518-ODW (SKx), 2024 WL 3291589 (C.D. Cal. Jul. 3, 2024) ....... 9

*Lewis v. Moss*,
　797 F.2d 747, 751 (9th Cir. 1986) ........................................................................... 4

*Lucas v. Michael Kors (USA), Inc.*,
　No. CV181608MWFMRWX, 2018 WL 2146403 (C.D. Cal. May 9, 2018) ........ 13

*Mamika v. Barca*,
　68 Cal.App.4th 487 (1998) ................................................................................... 11

*Marroquin v. Wells Fargo, LLC*,
　No. 11CV163-L BLM, 2011 WL 476540 (S.D. Cal. Feb. 3, 2011) ........................ 3

*Mintzis v. Scott*,
　No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. Jul. 30, 2014) ...... 4

*Mitchell v. United States*,
　88 U.S. 350, 353 (1874) .......................................................................................... 4

*Mondragon v. Capital One Auto Fin.*,
　736 F.3d 880, 886 (9th Cir. 2013) ........................................................................... 3

*Olson v. Becton, Dickinson & Co.*,
   No. 19-cv-00865-MMA-BGS, 2019 WL 4673329 (S.D. Cal. Sept. 25, 2019) .............. 9

*Serrieh v. Jill Acquisition LLC*,
   707 F.Supp.3d 968, 977-75 (E.D. Cal. 2023) ................................................................ 8

*Stafford v. Dollar Tree Stores, Inc.*,
   No. 2:13-CV-01187-KJM, 2014 WL 1330675 (E.D. Cal. Mar. 28, 2014) .............. 5, 14

*Stevenson v. Dollar Tree Stores, Inc.*,
   No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ................................ 14

*Tajonar v. Echosphere, L.L.C.*,
   No. 14CV2732-LAB RBB, 2015 WL 4064642 (S.D. Cal. Jul. 2, 2015) ................ 8, 10

**Statutes**

28 U.S.C. § 84(c) ................................................................................................................ 14

28 U.S.C. § 1332 ...................................................................................................... 1, 3, 14

28 U.S.C. § 1441(a) .......................................................................................................... 14

28 U.S.C. § 1446(a) .......................................................................................................... 14

28 U.S.C. § 1446(b) ............................................................................................................ 2

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant WAYFAIR LLC ("Defendant" or "Wayfair") hereby files this Notice of Removal pursuant to 28 U.S.C. § 1332 based on the Class Action Fairness Act of 2005 ("CAFA"). Defendant states that removal is proper for the following reasons:

**I.   PROCEDURAL HISTORY**

1. On November 5, 2025, Plaintiff Ed Joseph Korpie ("Plaintiff" or "Korpie"), on behalf of himself and on behalf of all persons similarly situated, filed a class action complaint (the "Complaint") in the California Superior Court for the County of Los Angeles entitled *Ed Joseph Korpie, an individual and on behalf of all others similarly situated v. WAYFAIR LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive*, Case No. 25STCV32611 ("State Court Action"). The Complaint purports to state causes of action on behalf of Plaintiff and the putative class members for: (1) Failure to Pay Minimum Wage in Violation of Cal. Lab. Code §§ 1194 & 1197 and the Applicable IWC Wage Order; (2) Failure to Pay Overtime Wages in Violation of Cal. Lab. Code § 510 and the Applicable IWC Wage Order; (3) Failure to Provide Meal Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (4) Failure to Provide Rest Periods in Violation of Cal. Lab. Code §226.7 and the Applicable IWC Wage Order; (5) Waiting Time Penalties in Violation of Cal. Lab. Code §§ 201 & 202; (6) Wage Statement Violations pursuant to Cal. Lab. Code § 226 and the Applicable IWC Wage Order; (7) Failure to Provide Timely Wages in Violation of Cal. Lab. Code § 204 and the Applicable IWC Wage Order; (8) Failure to Indemnify in Violation of Cal. Lab. Code § 2802 and the Applicable IWC Wage Order; (9) Violation of Quota Laws in Violation of Cal. Lab. Code §§ 2100, 2101, 2103, 2104, and 2105; and (10) Unfair Competition in Violation of Bus. & Prof. Code § 17200.

2. On December 3, 2025, Plaintiff initiated service of the Summons and

Complaint and notices and forms on Defendant. A true and correct copy of these documents is attached as **Exhibit A** to the Appendix, filed concurrently herewith. *See* Declaration of Nathan K. Low in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332 (D)(2) and (5) ("Low Decl."), ¶¶ 3-4.

3. On January 2, 2026, Defendant filed and served its Answer to the Complaint. A true and correct copy of this document is included in **Exhibit A** to the Appendix. Low Decl., ¶ 4.

4. The documents attached as **Exhibit A** to the Appendix constitute all pleadings, process, and orders served on and by Defendant in the State Court Action.

## II. TIMELINESS OF REMOVAL

5. The 30-day removal period runs when the party seeking to remove receives a "paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3). Plaintiff served the Summons and Complaint on Defendant on December 3, 2025. Low Decl. at ¶ 3. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendant was effectively served with the Summons and Complaint and within one year after commencement of this action.

## III. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

6. Written notice of this Notice of Removal to the United States District Court for the Central District of California will be served on Plaintiff's counsel of record at Bibiyan Law Group, P.C. A true and correct copy of Defendant's Notice to Adverse Party of Removal of Civil Action to Federal District Court is attached as **Exhibit B** to the Appendix (without exhibits because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 6.

7. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Los Angeles. A true and correct copy of Defendant's Notice to the Superior Court of Removal of Civil Action to Federal District Court is attached as **Exhibit C** to the Appendix (without exhibits

because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 7.

8. Proofs of Service of Defendant's Notice of Removal to Federal District Court to Adverse Parties and Notice of Removal to the Superior Court of the State of California, County of Los Angeles will be filed with this Court immediately. *See* Low Decl., ¶ 8.

## IV. REMOVAL IS BASED ON CAFA JURISDICTION

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (5). CAFA provides that a district court shall have original jurisdiction over a class action if (1) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action involves one hundred (100) or more putative class members; and (3) any member of the putative class is a citizen of a state different from any defendant (minimal diversity).

### A. Size of the Class

10. Wayfair has employed approximately 6,109 putative class members during the class period as measured from Wayfair data for the purposes of this submission to the Court during the four-year period of November 5, 2021 to December 16, 2025 ("Class Period") claimed to be at issue in the Complaint. Complaint, ¶ 33; Declaration of Valerie Bonilla in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332 (D)(2) and (5) ("Bonilla Decl."), ¶ 7. This satisfies the numerosity requirement under CAFA as it exceeds the minimum of 100 class members.

### B. Minimal Diversity

11. Minimal diversity of citizenship is also established under CAFA. To establish citizenship for diversity purposes, a natural person must be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Kanter v. Warnter-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A natural person's residence is prima facie evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L

BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011). In fact, it is presumed that a natural person's residence is their domicile, and the party resisting this presumption bears the burden of producing contrary evidence. *Lewis v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). Moreover, an existing domicile is presumed to continue. *Mitchell v. United States*, 88 U.S. 350, 353 (1874) ["[D]omicile, once acquired, is presumed to continue until it is shown to have been changed."]; *Mintzis v. Scott*, No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. Jul. 30, 2014).

12. Here, the putative class of approximately 6,109 putative class members contains citizens of various states including, Arizona, Nevada, and Texas whereas Wayfair is a limited liability company organized in the State of Delaware with its principal place of business in Boston, Massachusetts. Bonilla Decl., ¶¶ 5, 7.

13. At all times alleged in the Complaint, at the time of the filing of this action, and at the time this Notice of Removal was filed, the sole member of Wayfair is SK Retail, Inc. ("SK Retail"). Bonilla Decl., ¶ 4. SK Retail is now, and ever since this action commenced has been, incorporated under the laws of the State of Massachusetts. *Id.* Moreover, Boston, Massachusetts is the site of SK Retail's corporate headquarters and executive offices, where its high-level officers direct, control, and coordinate its activities. *Id.* SK Retail's executive and administrative functions, including corporate financing and accounting, are directed from Boston, Massachusetts. *Id.* SK Retail's corporate decisions, including operational, executive, administrative and policymaking, are made from its Boston, Massachusetts headquarters, including human resources, finance and accounting, treasury, legal, payroll, and safety. *Id.*

14. Accordingly, Wayfair is a citizen of the state of Massachusetts and not California.

15. Under Section 1332(d)(2) of the CAFA, only one member of the putative class must be a citizen of a state different from any defendant. Because Wayfair is a citizen of Massachusetts and numerous members of the putative class are citizens of different states, the minimal diversity requirement of the CAFA is met.

### C. Amount in Controversy

16. Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement, which under the CAFA is $5,000,000 in the aggregate. See, e.g., *Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-CV-01187-KJM, 2014 WL 1330675, at *2 (E.D. Cal. Mar. 28, 2014); see also *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-840 (9th Cir. 2002).

17. The U.S. Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) held that a defendant's notice of removal under the CAFA need include only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Should the plaintiff challenge defendant's assertion of the amount in controversy, at that stage as part of a remand challenge, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million, where, as here, the damages are unstated in the complaint. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

18. Although Wayfair reserves all rights and defenses and denies that this action is suitable for class action treatment, the amount in controversy requirement is derived from the complaint as pled, which in this class action, in the aggregate, places in controversy an amount well in excess of $5,000,000.

19. The amount of controversy in this matter is, based on a conservative estimate as set forth in greater detail below:

### D. Baseline Facts

20. During the Class Period (i.e., November 5, 2021 to December 16, 2025), Wayfair has employed approximately 6,109 class members ("Putative Class") based on the class defined in the Complaint. Bonilla Decl., ¶ 7; Complaint, ¶ 33.

21. During the Class Period, the Putative Class typically worked an estimated 110,466 workweeks and that most of these employees regularly worked at least 4 workdays per workweek for at least 8 hours per workday. Bonilla Decl., ¶ 8.

22. For purposes of this removal, Wayfair has applied California's minimum

wage for 2025 of $16.50 to calculate the theoretical damages at issue.

23. The putative Class has a relatively high turnover figure due to the nature of the work and entry level of most of the employees, with approximately 6,024 members of the Putative Class leaving their employment with Wayfair during the Class Period, approximately 4,165 of which left their employment with Wayfair from November 5, 2022 to December 16, 2025. Bonilla Decl., ¶ 9.

24. During the period from November 5, 2024 to December 16, 2025, Defendant issued approximately 13,978 wage statements to the 2,125 members of the Putative Class who were employed during this period. Bonilla Decl., ¶ 10.

25. During the Class Period, the Putative Class worked approximately 110,466 workweeks, and 441,864 workdays/shifts based on the minimum calculation of 4 workdays/shifts per workweek. Bonilla Decl., ¶ 8. While many putative class members may have worked more workdays than that, this figure is provided here as a conservative floor for purposes of the analysis in this removal that is not reasonably subject to dispute.

**E.  Minimum Wage Claims**

26. Plaintiff alleges that Defendants failed to pay minimum wages to Plaintiff and the Putative Class in violation of California state wage and hour laws by failing to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage. Complaint, ¶ 48.

27. Plaintiff alleges that Plaintiff and the Putative Class were suffered or permitted to work off the clock because Defendant required on duty or on call breaks and routinely interrupted breaks. Complaint, ¶¶ 63, 121.

28. Plaintiff further alleges that, "Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set out herein." Complaint, ¶ 41.

29. Plaintiff's allegations that Defendant failed to pay the Putative Class for all hours worked as a matter of "policy and practice" would conservatively result in potential damages of one hour of work unpaid for 25% of shifts worked during the class period. See, e.g., *Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal.

Jul. 27, 2022) ["District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]."] Thus, it is conservative to state for purposes of determining the amount in controversy for this removal, applying California's current minimum wage (which Plaintiff concedes is lower than Class Members' rates of pay), that total liability is $1,458,151.20 (20% of all workdays/shifts (as a very conservative estimate) x 1 hour underpaid at the minimum wage owed ($16.50/hr.)).

30. Furthermore, Plaintiff alleges liquidated damages pursuant to California Labor Code section 1194.2, which if proven places an amount in controversy that doubles the minimum wage violation to a total amount in controversy for minimum wage violations to the Putative Class at **$2,916,302.40** (minimum wage liability x 2). *See* Complaint, ¶ 49, 29:20.

### F. Overtime Claims

31. Plaintiff alleges several theories for why overtime wages might be owed, including as a result of failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay. Complaint, ¶ 54.

32. Plaintiff alleges that Plaintiff and the Putative Class were suffered or permitted to work off the clock because Defendant required on duty or on call breaks and routinely interrupted breaks. Complaint, ¶¶ 63, 121.

33. Plaintiff further alleges that, "Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set out herein." Complaint, ¶ 41.

34. While Plaintiff has not pinpointing any violation that occurred to the Plaintiff or any Putative Class Member, a reasonable extrapolation from Plaintiff's unpaid wages claim suggests that the time unpaid for overtime is equal to or consistent with the other unpaid time as the theories of liability (off the clock work, non-compliant meal periods, etc.) are included in the overtime liability allegations.

35. Accordingly, it is a reasonable interpretation of Plaintiff's complaint that he seeks an overtime premium for those same unpaid hours, which as paid at 0.5x the amount

unpaid, equals an additional floor of liability in the amount of an overtime premium at **$729,075.60** ($16.50/hr. x 1 hr. x 0.5 premium multiplied by 88,372.80, which is 20% percent of Class Members' workdays). Very likely Plaintiff is seeking a higher amount of unpaid overtime; thus, this is a conservative estimate.

### G.     Meal Period Claims

36.    The Complaint alleges that "Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted." Complaint, ¶ 61. Plaintiff alleges that Plaintiff and Putative Class Members were not provided with a first uninterrupted meal period on days on which they worked more than five (5) hours in a workday and a second thirty (30) minute uninterrupted meal break on days in which they worked in excess of ten (10) hours in a workday. Complaint, ¶ 21.

37.    Plaintiff also alleges that Defendant "enacted quotas that prevented Plaintiff and Class Members from taking lawful meal periods." Complaint, ¶ 20. Plaintiff further alleges that, "Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set out herein." Complaint, ¶ 41.

38.    The Complaint seeks the recovery of one hour's wages for each meal period the Proposed Class missed pursuant to Labor Code section 226.7. Complaint, ¶¶ 60, 64. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." The meal period claim brought under the Unfair Competition Law is subject to a four-year period of limitations. *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB RBB, 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015).

39.    Based on the allegations that Putative Class members were not provided with meal periods "at times" and that Defendant had "policies and/or practices" that resulted in these violations, Defendant continues its conservative approach, for the purpose of this analysis only, that the Putative Class members were not provided one meal period 20% percent of their workdays. *See Serrieh v. Jill Acquisition LLC*, 707 F.Supp.3d 968, 977-75

(E.D. Cal. 2023) [finding defendant's violation rate of 24% reasonable where plaintiff alleged that defendant from time to time failed to provide legally required off-duty meal breaks]; *La Grow v. JetBlue Airways Corp.*, No. 2:24-cv-00518-ODW (SKx), 2024 WL 3291589 (C.D. Cal. Jul. 3, 2024), at *4 [accepting 25% violation rate despite limiting language in complaint such as "from time to time" and "periodically"]; *Alfaro v. Banter by Piercing Pagoda*, No. SACV 22-00266-CJC(ADSx), 2022 WL 1284823, *3 (C.D. Cal. Apr. 29, 2022) ["A 25% violation rate is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy."]; *Olson v. Becton, Dickinson & Co.*, No. 19-cv-00865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) [finding a 25% violation rate to be appropriate].

40. Based thereon, the premium pay for the 6,109 employees is calculated as approximately **$1,458,151.20** (the current California minimum wage rate of $16.50 multiplied by 88,372.80, which is 20% of their workdays).

### H. Rest Period Claims

41. The Complaint alleges that Putative Class members "Plaintiff and Class Members were, at times, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof." Complaint, ¶ 69.

42. Plaintiff also alleges that Defendants' quota demands were unreasonable and pressured Plaintiff and Class Members to work through rest periods. Complaint, ¶ 22. Further, Plaintiff alleges that "Plaintiff and Class Members were not permitted to take compliant rest breaks, due to Defendants' unlawful policy and practice to favor production goals over employee rights." Complaint, ¶ 24.

43. The Complaint seeks the recovery of one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided. Complaint, ¶¶ 68, 70. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday

that the meal or rest or recovery period is not provided." The rest period claim brought under the Unfair Competition Law is subject to a four-year period of limitations. *Tajonar*, 2015 WL 4064642, at *3

44. The same math applies as with the meal period claim set forth in the prior section, as Defendant conservatively assumes for the purpose of this analysis only that the Putative Class members were not allowed one rest period 20% of their workdays, based on the allegation that the non-provision of rest periods occurred "from time to time" during the Class Period and that Defendant had a "policy" of requiring members of the Putative Class to forgo their rest breaks. Based thereon, the premium pay for missed meal periods that is at controversy for the Putative Class is calculated as **$1,458,151.20** (the current California minimum wage rate of $16.50 multiplied by 88,372.80, which is 20% of their workdays).

### I. Waiting Time Penalties

45. California law provides that if an employer willfully fails to pay the wages of an employee who is discharged or quits, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid … but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). The Complaint alleges that Defendant regularly failed to pay Plaintiff and members of the Putative Class their correct wages and accordingly owe waiting time penalties pursuant to Labor Code § 203. Complaint, ¶ 78.

46. The Complaint alleges that "For at least three (3) years prior to the filing of this action and continuing to the present, Defendants have, at times, failed to pay Plaintiff and Class Members the full amount of their wages owed to them upon termination and/or resignation as required by Labor Code sections 201 and 202, including for, without limitation, failing to pay overtime wages, minimum wages, and premium wages." Complaint, ¶ 26.

47. Plaintiff further alleges that, "Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set out herein." Complaint, ¶ 41.

48. Given the allegations, it is reasonable to assume (for purposes of this removal only), that members of the Putative Class who left their employment with Defendant, suffered at least one violation and were therefore not paid all wages owed upon the separation of employment. From November 5, 2022 through December 16, 2025, 4,165 members of the Putative Class left their employment with Defendant. Bonilla Decl., ¶ 9.

49. The amount in controversy on this claim is $16,493,400. This figure is based on daily rate of pay ($16.50/hr x 8 hours = $132) x 30 days = $3,960 per sub class member. *See Mamika v. Barca*, 68 Cal.App.4th 487 (1998) (daily rate calculated by multiplying hourly rate by hours worked each day, and then the daily rate is multiplied by the number of days of nonpayment, up to 30 days). This number is then multiplied by the 4,165 former Wayfair employees. Even conservatively applying this to only 50% of the subclass of former employees, which Plaintiff is almost certainly unwilling to cap accordingly, the amount in controversy on this claim would equal **$8,246,700**.

### J.     Wage Statement Penalties

50. The Complaint alleges that "in the one (1) year before the filing of the Complaint in this Action through the present, Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer, among other things." Complaint, ¶ 84. The Complaint further alleges "Defendants have further failed to furnish employees with an accurate calculation of gross and gross wages earned, as well as gross and net wages paid." Complaint, ¶ 27.

51. Plaintiff alleges that because of Defendant's knowing and intentional failure to comply with Labor Code § 226, Plaintiff and members of the Putative Class are entitled to penalties under the California Labor Code as provided in Labor Code § 226(e). Complaint, ¶ 87. Those penalties equal $50 for the first violating pay period, and $100 per

subsequent violation to an aggregate of $4,000 per putative class member. *Id.*

52. During the period from November 5, 2024 through December 16, 2025, Defendant issued approximately 13,978 wage statements to members of the Putative Class. Bonilla Decl., ¶ 10. There are 2,125 members of the class during this period, and thus an equivalent number of "first" violated pay periods at issue, with the remainder being subsequent pay periods. Thus, a calculation of the amount in controversy for the Putative Class is (13,978 x $100) – (2,125 x $50) = $1,291,550. Conservatively applying this to only 50% of the class, which Plaintiff is almost certainly unwilling to cap accordingly, that figure is **$645,775**.

K. <u>Untimely Wage Payments</u>

53. The Complaint alleges that Plaintiff and Putative Class members were employees covered by Labor Code section 204, which requires wage payments to be made on the following schedule: "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Complaint, ¶ 91.

54. California law provides that if an employer fails to pay the wages of an employee as provided in Labor Code section 204, the employer "shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee" and "(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." Complaint, ¶ 92.

55. The Complaint alleges that "in the one (1) year before the filing of the Complaint in this Action through the present, Defendants employed policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204." Complaint, ¶ 93. Specifically, Plaintiff alleges Defendants failed to timely pay the full amount of wages owed for labor performed. Complaint, at ¶ 27.

56. During the period from November 5, 2024 through December 16, 2025, Defendant issued approximately 13,978 wage statements to members of the Putative Class. Bonilla Decl., ¶ 10. There are 2,125 members of the class during this period, and thus an equivalent number of "first" violated pay periods at issue, with the remainder being subsequent pay periods. Thus, a calculation of the amount in controversy for the Putative Class is ((13,978 x $200) x 125%) – ((2,125 x $100) x 125%) = $3,228,875. Conservatively applying this to only 50% of the class, which Plaintiff is almost certainly unwilling to cap accordingly, that figure is **$1,614,437.50**.

### L.  Illegal Quota and Reimbursement Claims

57. Plaintiff's Eighth Cause of Action claims unpaid business expenses for members of the Putative Class for alleged use of personal cell phones without providing any detail as to what expenses were not paid, when, why, or in any frequency. Complaint, ¶ 99. This claim would place some amount in controversy, but it is too speculative to calculate based on the pleading.

58. Plaintiff's Ninth Cause of Action claims that Defendants violated Labor Code section 2100, *et seq.* by maintaining, implementing, and enforcing illegal quotas. Complaint, ¶ 111. Plaintiff alleges that these quotas, *inter alia*, adversely impacted Putative Class Members' right to take meal and rest breaks. Complaint, ¶¶ 119-25. Plaintiff seeks injunctive relief, attorney's fees, and costs in connection with this claim. Complaint, ¶ 128.

### M.  Attorney's Fees

59. When the underlying substantive law provides for an award of attorneys' fees, the removing party may include that amount in its calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, at *10 (C.D. Cal. May 9, 2018).

60. Plaintiff has sought attorneys' fees in the Complaint which in class action

cases is ordinarily measured by the Court as a percentage as the overall amount sought to be recovered. A conservative benchmark is a 25 percent fee award for attorneys' fees calculated on a percentage of the recovery basis. *Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675, at *9; *Stevenson v. Dollar Tree Stores, Inc.*, No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011), at *5. Thus applied, the amount in controversy is increased by 25% to account for Plaintiff's sought recovery of fees.

### N.  Conclusion on Amount in Controversy

61. In the aggregate among Plaintiff's causes of action, and based on Defendant's conservative application here, the amount in controversy for the class as alleged in premium pay and penalties on the various claims is: **$17,068,592.90** even when discounting the frequency of the claimed liability to account for allegations of "time to time" and "policies and practices", which surely Plaintiff is unwilling to so cap. To that figure an additional 25% can be included to account for the benchmark for attorney's fees in controversy. Thus, the amount that Plaintiff has placed in controversy in this class action is well in excess of the jurisdictional threshold of $5,000,000.

62. Accordingly, minimal diversity, class size, and the amount in controversy under the CAFA are satisfied pursuant to 28 U.S.C. § 1332, and therefore Wayfair has properly removed this State Court Action to this Court.

### V.  VENUE

63. Plaintiff originally filed this action in the Superior Court of the State of California, County of Los Angeles. The County of Los Angeles lies within the jurisdiction of the United States District Court, Central District of California. Therefore, venue also lies in the Central District of this Court pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a). This Court is the United States District Court for the district within which the State Court Action is pending. Thus, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

### VI.  SERVICE OF NOTICE OF REMOVAL ON STATE COURT

64. A true and correct copy of this Notice of Removal will be promptly served on

Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, as required under 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

Dated: January 2, 2026                    FISHER & PHILLIPS LLP

By: */s/ Elizabeth T. Ferguson*
Nathan K. Low
Elizabeth T. Ferguson

Attorneys for Defendant
WAYFAIR LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for DEFENDANT WAYFAIR LLC, certifies that this brief contains 5,508 words, which complies with the word limit of L.R. 11-6.1 (7,000 words).

Dated: January 2, 2026                    FISHER & PHILLIPS LLP

By: */s/ Elizabeth T. Ferguson*
Nathan K. Low