Nathan K. Low (SBN 299587)
E-Mail: nlow@fisherphillips.com
Elizabeth T. Ferguson (SBN 318934)
E-Mail: etferguson@fisherphillips.com
Phil N. Bui (SBN 328471)
E-Mail: pnbui@fisherphillips.com
Jonathan G. Chang (SBN 347678)
E-Mail: jchang@fisherphillips.com
FISHER & PHILLIPS LLP
1 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendant
WAYFAIR LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ED JOSEPH KORPIE, an individual and on behalf of all other similarly situated,

Plaintiff,

v.

WAYFAIR, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 2:26-cv-00024 SPG (Ex)

(Removed from Los Angeles County Superior Court, Case No. 25STCV32611)

Related Cases:

Case No. 5:26-cv-01814 KK (DTBx)

**DEFENDANT WAYFAIR LLC'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY THE PROCEEDINGS**

Date: May 27, 2026
Time: 1:30 p.m.
Place: First Street U.S. Courthouse
350 W. 1st Street, 5th Floor
Courtroom 5C
Los Angeles, California 90012

Complaint Filed: November 5, 2025
Removal: January 2, 2026
Trial Date: October 19, 2027

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. WAYFAIR HAS MET ITS BURDEN OF DEMONSTRATING THAT PLAINTIFF ELECTRONICALLY SIGNED THE ARBITRATION AGREEMENT .......... 2

a. Plaintiff Electronically Signed the Arbitration Agreement .......... 2

b. The Facts In *Ruiz v. Moss Bros Auto Group, Inc.* Are Distinguishable .......... 5

III. PLAINTIFF FAILS TO ESTABLISH THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABLE .......... 7

a. The Arbitration Agreement is Not Procedurally Unconscionable .......... 7

i. The Agreement Is Not an Unenforceable Contract of Adhesion .......... 7

ii. Plaintiff Is Precluded from Claiming Surprise and Oppression .......... 9

b. The Arbitration Agreement is Not Substantively Unconscionable .......... 11

i. The Arbitration Agreement is Not Unconscionable Under *Cook* .......... 11

ii. Wayfair's Pre-Arbitration Informal Grievance Procedure is Neither Unfair Nor Unconscionable .......... 12

iii. The Confidentiality Provision is Not Unilateral or Overbroad .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## Cases

*24 Hour Fitness, Inc. v. Sup. Ct*
66 Cal.App.4th 1199, 1213 (1998) ........ 11

*Armendariz v. Foundation Health Psychcare Services, Inc.*
24 Cal.4th 83, 114 (2000) ........ 7

*Brookwood v. Bank of America NT&SA et al.*
45 Cal.App.4th 1667, 1673-1674 (1996) ........ 8

*Chamber of Com. of the United States of Am. v. Bonta*
62 F.4th 473 (9th Cir. 2023) ........ 9

*Constantian v. Mercedes-Benz Co.*
5 Cal.2d 631, 634 (1936) ........ 10

*DVD Copy Control Assn. v. Kaleidescape*
76 Cal.App.4th 697, 713 (2009) ........ 10

*Engalla v. Permanente Med. Group, Inc.*
15 Cal. 4th 951, 972 (1997) ........ 7

*Espejo v. Southern California Permanente Medical Group*
246 Cal.App.4th 1047, 1062 (2016) ........ 5

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20, 23 (1991) ........ 9

*Giuliano v. Inland Empire Personnel Inc.*
149 Cal. App. 4th 1276, 1281-82, 1293 (2007) ........ 10

*Graham v. Scissor-Tail, Inc.*
28 Cal.3d 807, 820 (1981) ........ 7

*Kairy v. Supershuttle Int'l, Inc.*
No. C 08-02993 JSW, 2012 WL 4343220, at *10 (N.D. Cal. Sep. 20, 2012) ........ 7

*Kinney v. United HealthCare Serv., Inc.*
70 Cal.App.4th 1322 (1999) ........ 7

*Lagatree v. Luce, Forward, Hamilton & Scripps*
74 Cal.App.4th 1105, 1123 (1999) ........ 9

*Landaverde v. CarMax Auto Superstores, Inc.*
No. SACV 24-0071JGB (KESX), 2024 WL 3915099, at *10 (C.D. Cal. July 11, 2024) ........ 15

*Peng v. First Republic Bank*
219 Cal. App. 4th 1462, 1472 (2013) ........ 10

*Pinnacle Museum Tower Assoc. v. Pinnacle Market Development (US), LLC*
55 Cal. 4th 223, 246 (2012) ........ 11

*Poublon v. C.H. Robinson Co.*
846 F.3d 1251, 1266 (9th Cir. 2017) .......... 15

*Ramirez v. Charter Commc'ns, Inc.*
16 Cal. 5th 478 (2024) .......... 15

*Rickards v. United Parcel Service, Inc.*
206 Cal.App.4th 1523, 1529 (2012) .......... 2

*S.E.C. v. Platforms Wireless Int'l Corp.*
617 F.3d 1072, 1087 n.9 (9th Cir. 2010) .......... 3

*Sanchez v. Carmax Auto Superstores California, LLC*
224 Cal. App. 4th 398, 408 (2014) .......... 15

*Zkey Invs. LLC v. Facebook Inc.*
225 F.Supp.3d 1147, 1158 (C.D. Cal 2016) .......... 3

**Statutes**

Cal. Civ. Code § 1633.7(d) .......... 2

Cal. Civ. Code § 1633.9(a) .......... 2

## I. INTRODUCTION

This Court should grant Defendant Wayfair LLC's Motion to Compel Individual Arbitration, Strike Class Claims, and Stay the Proceedings ("Motion"). Plaintiff's Opposition to the Motion includes multiple admissions that support the enforcement of the Voluntary and Mutual Arbitration Agreement (the "Arbitration Agreement" or "Agreement") at issue in this case. Plaintiff admits that he was provided with a laptop as part of his orientation on March 26, 2025; he admits that he created a password to login to access the work-related system as part of that onboarding process; he admits that he entered his personal information including his social security number into the electronic system; and he admits that he completed several onboarding documents through the electronic system. Plaintiff also claims that the onboarding process lasted "five and a half hours" – a claim that underscores the fact that Wayfair did not rush employees through the onboarding process but instead provided employees, including Plaintiff, plenty of time to review, consider, and acknowledge the Agreement.

As to the Arbitration Agreement itself, however, Plaintiff conveniently appears to have a selective memory. He claims that he does not recall reviewing it or clicking the "I Agree" checkbox and on that basis denies that he electronically signed it. However, these claims are easily refuted by the Declaration of Srinivasa Naidu Chikkala, which provided a detailed description of the Workday system that Wayfair uses to provide employees, including Plaintiff, with onboarding documents, including the Agreement. His declaration also describes the security measures for Workday that employees use to access and sign the Agreement through a user-created password on Okta, consistent with Plaintiff's admissions in his declaration. Defendant also provided Plaintiff with copies of his Workday and Okta logs in response to discovery requests, which show that Plaintiff set up an account with a multifactor authentication that used the same phone number as the one on file for Plaintiff. Mr. Chikkala's declaration also authenticates records from the Workday recording log that prove that Plaintiff clicked the "I Agree" checkbox for the Arbitration Agreement and that the Workday system recorded his electronic signature on

March 26, 2025 at 15:35 (3:35 p.m. EDT).

Further, while Plaintiff claims that he does not recall reviewing the Arbitration Agreement, this claim does not render the Arbitration Agreement unenforceable. It is well established under California law that employees are bound to arbitration agreements even if they later claim not to have read the agreement. Moreover, Plaintiff's claims that he should be allowed to evade his obligations under the Arbitration Agreement based on procedural and substantive unconscionability are also unavailing. As discussed herein, Wayfair has provided unequivocal evidence that Plaintiff was given the opportunity to review and reject the Arbitration Agreement; that Plaintiff affirmatively accepted and agreed to be bound to the Arbitration Agreement by clicking the checkbox labeled "I Agree"; and that the Arbitration Agreement fully complies with all applicable federal and California laws, with the plain language of the agreement compelling the parties to arbitrate any claims arising out of Plaintiff's employment and waiving class action claims. For these reasons, and as discussed more fully below, Wayfair requests that the Court grant the instant Motion in its entirety.

## II. WAYFAIR HAS MET ITS BURDEN OF DEMONSTRATING THAT PLAINTIFF ELECTRONICALLY SIGNED THE ARBITRATION AGREEMENT

### a. Plaintiff Electronically Signed the Arbitration Agreement

Under the California Uniform Electronic Transactions Act ("UETA"), "If a law requires a signature, an electronic signature satisfies the law." Cal. Civ. Code § 1633.7(d). The UETA further provides that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner[.]" Cal. Civ. Code § 1633.9(a) (emphasis added); *Rickards v. United Parcel Service, Inc.*, 206 Cal.App.4th 1523, 1529 (2012). The UETA specifically allows a proponent to prove an individual signed an electronic agreement by "a showing of the efficacy of any security procedure" for the signing process. Cal. Civ. Code § 1633.9(a)

Filed concurrently with the Motion was a declaration from Srinivasa Naidu

Chikkala, who is a Senior Manager, Human Resources Information Systems at Wayfair responsible for building and managing modules in the Workday program. Declaration of Srinivasa Naidu Chikkala ("Chikkala Decl."), ¶ 2. In his declaration, Mr. Chikkala described in detail the security procedures that were in place to ensure that only the applicable employee can log into their Workday account to complete the onboarding documents within the Workday system, which was utilized by Wayfair before and during Plaintiff's hire and onboarding. Chikkala Decl., ¶¶ 3-6. His declaration states that Wayfair employees use Okta, Wayfair's employee application program, to access Workday during the onboarding process. *Id.* ¶ 4. His supplemental declaration as well as the other supplemental declarations submitted by Wayfair provide further detail as to the onboarding process and logs in direct response to Plaintiff's declaration and factual assertions raised in the Opposition. *See* Supplemental Declaration of Srinivasa Naidu Chikkala ("Chikkala Supp. Decl."), ¶¶ 3-10; *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1087 n.9 (9th Cir. 2010) (The court may consider evidence, even new evidence, submitted with the reply brief that rebuts arguments raised by plaintiff in its opposition); *Zkey Invs. LLC v. Facebook Inc.,* 225 F.Supp.3d 1147, 1158 (C.D. Cal 2016) (evidence "submitted in direct response to proof adduced in opposition to a motion" is not "new" evidence).

Employees are issued a username and temporary password for Okta by email. *Id.* Once logged in, employees are prompted to reset their Okta password and create a permanent password, which is not retrievable by Wayfair. Chikkala Decl., ¶¶ 4, 5. Employees are also required to set up multifactor authentication ("MFA") as an additional security measure to verify their identity when they log into Okta. Chikkala Supp. Decl., ¶ 3. As one method of MFA, employees can enter their phone number into the Okta system so that one-time passcodes are sent to their cellphone via SMS messages. *Id.*

After logging into Okta, employees can access Workday. Chikkala Decl., ¶ 4; Chikkala Supp. Decl., ¶ 4. Workday automatically generates and assigns a unique employee identification number that is permanently linked to that specific individual employee. Chikkala Supp. Decl., ¶ 4. These identifiers are not generic, transferable, or

capable of reassignment to another user. *Id.* Okta automatically generates two separate logs tracking an employee's access and activities in Okta and Workday in real time. *Id.*, ¶ 5. When an employee clicks the box next to the words "I Agree" to electronically sign the Arbitration Agreement, Workday automatically records metadata through a Workday recording log. Chikkala Decl., ¶ 10; Chikkala Supp. Decl., ¶ 11. Specifically, Workday records the date and time that an employee clicks the "I Agree" box, the name of the document for which they clicked the box, and the language of the "Signature Statement" that appears above the box. *Id.* The Workday recording log also identifies the name and employee ID number of the individual that signs the Arbitration Agreement. Chikkala Decl., ¶ 11, Ex. C; Chikkala Supp. Decl., ¶ 11.

The Okta and Workday logs that Defendant produced to Plaintiff on March 27, 2026 in response to his discovery requests show that Plaintiff logged onto these systems to execute the Arbitration Agreement. Plaintiff was issued username "ek574g" and employee identification number 1133574, which is uniquely tied to Plaintiff and his employment records within the system. *See* Chikkala Supp. Decl., ¶¶ 6-7. The Okta log for his account reflects that on March 26, 2025 at 18:46 UTC (2:46 p.m. EDT), he logged into the Okta system via iPhone, updated his password for Okta, and setup multifactor identification via phone verification through SMS message sent to +14246452063, which matches the phone number on file for Plaintiff. *Id.*, ¶¶ 6, 9, Ex. D. He then logged onto Workday at 18:57 UTC (2:57 p.m. EDT) and his employee identification number was recorded as "1133574." *Id.*, ¶ 7, Ex. E. The Workday recording log for the electronic signature to the Arbitration Agreement shows that it was executed on March 26, 2025 at 15:35 (3:35 p.m. EDT) by "Ed Korpie (Terminated) ([Employee ID Number] 1133574)." Chikkala Decl., ¶ 11; Chikkala Supp. Decl., ¶ 12. Thus, Wayfair's security measures and the Okta and Workday logs show that Plaintiff's electronic signature to the Arbitration Agreement is attributable to Plaintiff as contemplated by the UETA.

Plaintiff's claim that he did not sign the Arbitration Agreement is further weakened by the admissions that he makes in his declaration. He admits that on his first day of work

on March 26, 2025, he was provided with a laptop as part of his orientation to access Wayfair's work-related systems and to complete onboarding documents over a period of five and a half hours. Declaration of Ed Joseph Korpie ("Korpie Decl."), ¶¶ 2, 4. He admits that he set up work-related accounts including a password so that he could login; he admits that he entered his personal information including his social security number into the electronic system; and he admits that he completed several onboarding documents on the system, including filling out a W-[4] and other tax documents. Korpie Decl., ¶¶ 2-3. As reflected in Wayfair's declarations, all of this is done via the Workday platform. Chikkala Decl., ¶¶ 3-4, 6; Supplemental Declaration of Valerie Bonilla Decl. ("Bonilla Supp. Decl."), ¶ 4, 6. Plaintiff also inputted demographic information into his Workday profile that could only have been added by Plaintiff; Wayfair would not have had that information. Bonilla Supp. Decl. ¶¶ 4-5. Thus, there is no reasonable basis to conclude that anyone other than Plaintiff executed the Arbitration Agreement.

**b. The Facts In *Ruiz v. Moss Bros Auto Group, Inc.* Are Distinguishable**

Plaintiff relies on *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836 (2014), to argue that his signature cannot be authenticated. However, such reliance is unfounded. In *Ruiz,* the motion to compel was denied because the declarant did not explain how she concluded that the plaintiff's signature was on the document. *Id.* at 843. Instead, the declaration "summarily asserted" the arbitration agreement had been electronically signed by the employee and, as such, was inadequate to authenticate the agreement. *Id.* at 839.

By contrast, Mr. Chikkala's declarations are more akin to the one in *Espejo v. Southern California Permanente Medical Group*, 246 Cal.App.4th 1047, 1062 (2016), which "offered the critical factual connection that the declarations in *Ruiz* lacked." Mr. Chikkala detailed Wayfair's security precautions regarding transmission and use of Mr. Korpie's unique username and password, as well as the steps he would have taken to execute the document, which is a valid means of authenticating the agreement under *Espejo*. *See* Chikkala Decl., ¶¶ 3-11; Chikkala Supp. Decl., ¶¶ 3-12; *see also Espejo*, 246 Cal.App.4th at 1062. Moreover, Mr. Chikkala's declaration shows that Plaintiff is the only

one with access to the unique password used to sign the Arbitration Agreement, and that Plaintiff used his personal phone number for multifactor authentication. Chikkala Decl., ¶ 5; Chikkala Supp. Decl., ¶ 6. In short, Mr. Chikkala's declaration exceeds the evidentiary showing required to establish an electronic execution of an agreement.

Plaintiff's reliance on *Garcia v. Stoneledge Furniture LLC*, 102 Cal. App. 5th 41, 53 (2024), in support of his argument that his electronic signature on the Agreement is invalid, is likewise misguided. In *Garcia*, the employer did not detail the security precautions to show that the electronic signature on the agreement could have only been placed on the system using the employee's user ID and password. *Id.* The court, however, recognized that authentication may be established where a party presents "evidence that the signatory was required to use a unique, private login and password to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." *Id.*

Here, Mr. Chikkala has explained in detail the steps an employee must take during the onboarding process to create a secure, individualized login. Each of the steps requires an employee to login to Okta using the employee's hand-selected password and unique credentials to access Workday and acknowledge the Agreement. Mr. Chikkala's declaration establishes that only Plaintiff could have taken those steps. Indeed, electronic log entries show that "Ed Korpie" created a password and used a phone number matching the phone number on file for Plaintiff for multifactor authentication. Chikkala Supp. Decl., ¶¶ 6, 9, Ex. D, F. The Workday recording log shows that after logging into these systems, "Ed Korpie" signed the Arbitration Agreement and that his unique employee identification number was recorded in Workday's metadata for the recording log. Chikkala Decl., ¶ 11, Ex. C; Chikkala Supp. Decl., ¶¶ 6, 11. The time and events captured in the Okta and Workday activity logs as well as Plaintiff's own admissions about his attendance at new hire orientation and use of the onboarding system on March 26, 2025 show that the electronic signature on the Arbitration Agreement was the act of Plaintiff. As such, this Court should find that the evidence submitted in support of the Motion is sufficient to show

Plaintiff electronically signed the Arbitration Agreement.

## III. PLAINTIFF FAILS TO ESTABLISH THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABLE

Plaintiff bears the burden of proving unconscionability. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 820 (1981); *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 972 (1997). Sufficient procedural and substantive unconscionability must both "be present in order for a court to exercise its discretion to refuse to enforce a contract." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000)*; Kinney v. United HealthCare Serv., Inc.*, 70 Cal.App.4th 1322 (1999). Unconscionability is not easily established, and the bar may not be lowered because the contract at issue is an arbitration agreement. *Id.* The assessment for unconscionability is made on a "sliding scale," thus, the less procedurally unconscionable the term, the more evidence of substantive unconscionability is required to find an agreement unenforceable. *Id.* Plaintiff fails to prove unconscionability exists here, thereby requiring enforcement of the Agreement.

### a. The Arbitration Agreement is Not Procedurally Unconscionable

Plaintiff's argument that the Agreement is procedurally unconscionable is meritless. "Procedural unconscionability focuses on 'oppression' or 'surprise' due to unequal bargaining power." *Kairy v. Supershuttle Int'l, Inc.*, No. C 08-02993 JSW, 2012 WL 4343220, at *10 (N.D. Cal. Sep. 20, 2012). Here, Plaintiff fails to establish unfair surprise or oppression.

#### i. The Agreement Is Not an Unenforceable Contract of Adhesion

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because the Agreement is a contract of adhesion. However, Plaintiff's Opposition provides contradictory statements in this regard. In his Opposition, Plaintiff argues that Wayfair presented the Arbitration Agreement "as one part of a required onboarding," and that he did not have the opportunity to "meaningfully bargain" over the terms of the agreement. Opposition, 11:15-20. However, in his Declaration, Plaintiff claims that he did not recall the word "arbitration" being mentioned and did not recall opening the Arbitration

Agreement, reviewing it, or signing it. Korpie Decl., ¶¶ 5-6. Plaintiff cannot claim that he was forced to sign an agreement that he does not remember. Moreover, Plaintiff's self-serving contention that no one ever discussed the Arbitration Agreement with him does not result in a lack of mutual assent. *Brookwood v. Bank of America NT&SA et al.*, 45 Cal.App.4th 1667, 1673-1674 (1996) (An employee is "bound by the provisions of [an] [arbitration] agreement regardless of whether [he] read it or [was] aware of the arbitration clause when [he] signed the document.") Plaintiff's declaration fails to credibly challenge the declarations of Mr. Chikkala, wherein Mr. Chikkala establishes in detail his basis for concluding that Plaintiff did electronically sign the Arbitration Agreement and provides the Okta and Workday activity logs and the Workday recording log in support.

Furthermore, evidence submitted by Wayfair shows that the Arbitration Agreement is not a compulsory agreement. The voluntariness of the agreement in the Signature Statement captured in the Workday recording log where Plaintiff acknowledges that he "carefully read" and understood the terms of the Arbitration Agreement; entered into it "knowingly and voluntarily"; he understood that he was "knowingly and voluntarily giving up the right to have Covered Claims decided by a court or jury"; and he had "been given the opportunity to discuss this Agreement with [his] own attorney if [he] wish[ed] to do so." Chikkala Decl., ¶ 8, Ex. A, C. The Bonilla Declaration provides further evidence of the voluntary nature of the Arbitration Agreement by explaining that Wayfair does not require employees to sign the Arbitration Agreement within a certain period of time and they may have as much time as they need to review it before deciding whether to sign it. Bonilla Decl., ¶ 9. The Chikkala Declaration also reinforces this point by documenting that the affirmative acknowledgment link for the Arbitration Agreement does not expire on Workday, and employees may sign the Arbitration Agreement at any time after they receive it. Chikkala Decl., ¶ 9. The title of the Arbitration Agreement, "Voluntary and Mutual Arbitration Agreement," serves as additional indicia of it being voluntary. Chikkala Decl., Ex. B. Taken together, there is simply no evidence other than Plaintiff's contradictory declaration to show that entering the Arbitration Agreement was a mandatory

condition of employment.

Moreover, even if the Arbitration Agreement was presented on a "take-it-or-leave-it" basis that required Plaintiff to sign and accept it to commence his employment (which is not the case here), that does not automatically render it unconscionable. Courts have repeatedly upheld arbitration agreements presented to employees in this manner. *See, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (a pre-dispute arbitration agreement is not invalid because it is imposed as a condition of employment), *accord. Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal.App.4th 1105, 1123 (1999). Recently, the Ninth Circuit affirmed the preliminary injunction on AB 51 which sought to prohibit employers from imposing arbitration on specific claims as a condition of employment. *Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473 (9th Cir. 2023). The Ninth Circuit reiterated the national policy in favor of arbitration and noted that "under California law, an employee can 'consent' to an employment contract by entering into it, even if the contract was a product of unequal bargaining power and even if it contains terms (such as an arbitration provision) that the employee dislikes […]." *Id.* at 489. As such, "'[m]ere inequality in bargaining power' is not a sufficient reason to refuse to enforce an arbitration agreement in the employment contract […]." *Id.* Plaintiff has provided no evidence that he desired or tried to reject or negotiate the terms of the Arbitration Agreement, its form, or how it was presented. Wayfair, on the other hand, has presented ample evidence that the Arbitration Agreement was voluntary. Thus, this Court should find that the Arbitration Agreement was an elective agreement.

**ii. Plaintiff Is Precluded from Claiming Surprise and Oppression**

Plaintiff claims that the Arbitration Agreement is procedurally unconscionable because it was provided as part of Wayfair's electronic onboarding process. Opposition, 13:5. He claims that the Arbitration Agreement was hidden, and cites to *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656 (2004) in support of this argument. However, the court in that case did not examine the issue of whether procedural unconscionability existed due to the element of surprise, as it relied on its finding that the

agreement was oppressive, which is not the case here. *See id.* at 663. Moreover, this Arbitration Agreement was not buried in a larger employment agreement like in *Abramson* or included as provisions hidden in a prolix printed form. *See id.* at 656. Rather, the Arbitration Agreement was a standalone agreement in its own Workday module, prominently labeled "Voluntary and Mutual Arbitration Agreement" with bold font clearly identifying the name of the document and link to it, instructions, signature statement, and a large check box with "I Agree" appearing in bold font next to it. Chikkalala Decl., Ex. A. While Plaintiff claims that there was no visible decline, skip, or opt out path, Plaintiff could have refrained from affirmatively checking the "I Agree" checkbox if he intended to opt out of the Arbitration Agreement. But he did not do so and instead chose to electronically execute the Arbitration Agreement.

Plaintiff also makes the misguided argument that the Arbitration Agreement is procedurally unconscionable because Wayfair did not provide him with a copy of incorporated arbitration rules. Opposition, 13:12-25. However, courts have repeatedly enforced arbitration agreements that incorporate but do not attach the applicable arbitration rules. See e.g., *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013), as modified (Oct. 2, 2013) (holding that the arbitration agreement was not rendered unconscionable due to arbitration rules that were incorporated by reference but not attached to the arbitration agreement); *Giuliano v. Inland Empire Personnel Inc.*, 149 Cal. App. 4th 1276, 1281-82, 1293 (2007) (enforcing an arbitration agreement incorporated arbitration rules by reference). Plaintiff does not cite any authority that deems an arbitration agreement procedurally unconscionable solely because it did not attach a copy of the arbitration rules referenced in the agreement. California law does not require a copy of referenced documents to be attached to a contract if otherwise easily available. *DVD Copy Control Assn. v. Kaleidescape*, 176 Cal.App.4th 697, 713 (2009). If an employee chooses to sign a contract that references these rules without having first sought out and read them, the employee is still bound by the contract. *Constantian v. Mercedes-Benz Co.*, 5 Cal.2d 631, 634 (1936) (A party cannot escape contract by claiming not to have read or understood

all terms). Hence, referencing readily available arbitration rules without attaching those rules does not show unconscionability. Further, Plaintiff has failed to present any evidence that he asked for a copy of the arbitration rules, and he does not identify any feature of the rules that would prevent fair and full arbitration. As such, Plaintiff has not demonstrated an element of "unfair surprise," so his procedural unconscionability defense fails.

**b. The Arbitration Agreement is Not Substantively Unconscionable**

Even if Plaintiff could establish that the Arbitration Agreement is procedurally unconscionable (which he cannot) his unconscionability defense fails for the additional reason that he cannot establish substantive unconscionability. Substantive unconscionability focuses on whether the terms are so unilateral so as to "shock the conscience." *24 Hour Fitness, Inc. v. Sup. Ct*, 66 Cal.App.4th 1199, 1213 (1998), *accord. Pinnacle Museum Tower Assoc. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246 (2012).

**i. The Arbitration Agreement is Not Unconscionable Under *Cook***

Plaintiff claims that the Arbitration Agreement requires Plaintiff to arbitrate against third parties (which is not even the case in the instant action) and that this renders the Arbitration Agreement substantively unconscionable. Opposition, 14:17-28, 15:1-22. However, Plaintiff premises this argument based on a misunderstanding of the court's decision in *Cook*. *See Cook v. University of Southern California*, 102 Cal.App. 5th 312 (2024). The language at issue there required "Cook to arbitrate claims that [were] unrelated to her employment with USC" even if the claims arose decades later. *Id.* at 318-19. This type of expansive language was the focal point in *Cook* and is not present in the Arbitration Agreement signed by Plaintiff.

Unlike *Cook*, the Arbitration Agreement explicitly states that the claims covered are those arising out of or related to Plaintiff's employment relationship with Wayfair (or separation of employment). Chikkala Decl., Ex. B, p. 1. The practical implication of the parties impacted by the agreements is also distinguishable. The *Cook* agreement bound the signatory to arbitrate claims "against the University or any of its related entities, including

but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, *in their capacity as such or otherwise*; and all claims that the University may have against Employee." *Cook*, 102 Cal. App. 5th at 317 (emphasis added). In other words, the plaintiff was bound to arbitrate her claims against USC and related entities and individuals in their professional or personal capacities under the agreement. Here, by contrast, the Arbitration Agreement here does not provide for any such broad coverage as it is limited to work-related relationships and claims.

Moreover, the infinite duration language in *Cook* is distinguishable from Plaintiff's Arbitration Agreement, contrary to his claims. *See* Opposition, 19:12-28, 20:1-11. Plaintiff's duration argument rests on a misreading of the Arbitration Agreement. Although the obligations under the Agreement continue after termination of employment, the circumstances here are inapposite to *Cook* because the Agreement solely covers employment-related claims between Plaintiff and Defendant. Thus, the Agreement can only be reasonably interpreted to mean that it covers the duration of Plaintiff's employment relationship with Wayfair as that is the only relationship they had, which also maintains a specific end date contingent upon the cessation of the employment relationship. Because all such claims are governed by applicable statutes of limitations, the duration of the Arbitration Agreement has a natural and reasonable end date – namely, when the statutes of all such employment-related claims have run. Arbitration agreements generally do not expire upon separation of employment and are intended to continue beyond that date. In fact, it would be illogical for an arbitration agreement to expire at the conclusion of employment, as the overwhelming majority of employment claims arise post-employment (and often, as the product of that separation). Thus, Plaintiff's argument, that the Agreement is substantively unconscionable because it is infinite in duration, is a misapplication of *Cook* and therefore must fail.

**ii. Wayfair's Pre-Arbitration Informal Grievance Procedure is Neither Unfair Nor Unconscionable**

Plaintiff alleges that the Arbitration Agreement is substantively unconscionable

because it asks signatories to bring concerns through an internal grievance process prior to filing a demand in arbitration. Plaintiff relies on *Nyulassy* and *Navas* for his position that this internal process provides Wayfair with a "free peek" at his case, which he claims is unfair. However, Plaintiff's reliance on *Nyulassy* and *Navas* is misplaced.

In *Nyulassy*, the employer included within its arbitration agreement a provision requiring employees to submit to discussions with their supervisors in advance of, and as a condition precedent to, proceeding to arbitration. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1282 (2004). This pre-dispute process and the agreement to arbitrate only applied to employees seeking to make claims against the employer and did not extend these same obligations to the employer making claims against the employee. *See id.* at 1273, n. 4. The *Nyulassy* court determined this provision gave the employer a "free peek" at the employee's claims, and an advantage in litigation. *Id.* at 1282-83. In reaching its conclusion that the agreement was substantively unconscionable, the *Nyulassy* court relied on multiple factors, including that the provision requiring only employees and not the employer to submit claims to arbitration, the provision for pre-arbitration steps, and the provision shortening the statute of limitations, which "***taken together*** . . . render[ed] [the arbitration agreement] substantively unconscionable." *Id.* at 1283 (emphasis added). Plaintiff also argues that *Navas* provides further support based on its holding that "provisions that do not excuse an employee from utilizing internal procedures without specifying those procedures [operate] as a 'one-sided shield' because the employee does not know what he or she is agreeing to [with respect to those procedures]." Opposition, 16:5-9, citing *Navas v. Fresh Venture Foods, LLC*, 85 Cal. App. 5th 626, 636 (2022). However, the holdings in these cases are not applicable to the Arbitration Agreement at issue here.

Unlike in *Nyulassy*, the Arbitration Agreement in this case is mutual, it does not shorten the statute of limitations, and it does not unilaterally require the employee to submit to the informal grievance procedure. Both Wayfair and Plaintiff are equally bound to follow the informal grievance procedure. While Plaintiff claims that this procedure gives

Wayfair an unfair free peek at his claims, Plaintiff fails to acknowledge that this same procedure also gives Plaintiff the same insight into any claims made against him by Wayfair. It also isn't clear from Plaintiff or the *Nyulassy* court how notice of a claim prior to arbitration being initiated would somehow constitute a litigation advantage that "shocks the conscience." As for Plaintiff's reliance on *Navas*, that case has no relevance here because the informal grievance procedure is clearly specified in the Arbitration Agreement, thus providing Plaintiff with notice. *See* Chikkala Decl., Ex. B, p. 3. Accordingly, this Court should not find that the informal grievance procedure has any impact on the enforceability of the Arbitration Agreement.

**iii. The Confidentiality Provision is Not Unilateral or Overbroad**

In a final attempt to evade his obligation to arbitrate, Plaintiff contends that the confidentiality clause is unconscionable on the grounds that it lacks mutuality, relying on *Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1067 (2018) and *Ting v. AT&T*, 219 F.3d 1126 (9th Cir. 2003). Opposition, 17:12-19:9. In making this argument, Plaintiff mischaracterizes the confidentiality provision. Contrary to Plaintiff's claims, the confidentiality provision in the Arbitration Agreement is mutual as it applies equally to both parties. It provides, in relevant part: "***The Parties*** shall maintain the confidential nature of the arbitration proceeding and the award . . . ." Chikkala Decl., Ex. B, p. 5 (emphasis added). It is also distinguishable from the confidentiality provision in *Ramos*, which was broad and did not contain carveouts, which the plaintiff argued prevented her from gathering evidence in her case. *Id.* Here, however, the provision includes multiple carveouts not just the carveout acknowledged by Plaintiff that allows the parties to communicate with witnesses to assist in arbitrating the proceeding. *See* Opposition, 18:12-15; Chikkala Decl., Ex. B, p. 5. Additional exceptions to the confidentiality provision exist here where "necessary in connection with a court application for a provisional remedy under applicable law, a judicial action to vacate or enforce an award, or unless otherwise required by law or allowed by prior written consent of both parties." Chikkala Decl., Ex. B, p. 5.

Similarly, Plaintiff's reliance on *Ting* is also misplaced as the court was examining a consumer arbitration agreement that did not contain carveouts and instead broadly provided that "[a]ny arbitration [was to] remain confidential." *Ting*, 319 F.3d at 1151. The court found that this restriction was particularly harmful because the contract affected "seven million Californians." *Id*. at 1152. Given how confidentiality could negatively affect the public at large in consumer cases brought against AT&T, the Court held that the confidentiality provision was unconscionable.

The Arbitration Agreement at issue here, however, is not a consumer arbitration agreement. It is not overbroad as it contains numerous carveouts, which allow for the arbitration proceedings and award to remain confidential while ensuring that the provision is not unfairly restrictive. This Agreement also does not affect the public at large with millions of people being impacted. Courts have found that confidentiality provisions like this one are reasonable and enforceable. See, e.g., *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398, 408 (2014), disapproved of on other grounds *by Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) (holding that the confidentiality provision contained in the arbitration agreement which contained similar exceptions to the provision here was not unconscionable); *accord. Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017) (same); *Landaverde v. CarMax Auto Superstores, Inc.,* No. SACV 24-0071JGB (KESX), 2024 WL 3915099, at *10 (C.D. Cal. July 11, 2024) (same). Thus, the confidentiality clause here is not substantively unconscionable because it reasonably permits confidentiality while also permitting disclosure based on the exceptions outlined in the provision. Therefore, this Court should find that the confidentiality provision has no impact on the enforceability of this Arbitration Agreement.

## IV. CONCLUSION

Plaintiff has failed to meet his burden of establishing that the Arbitration Agreement is invalid. Defendant therefore respectfully submits that this Court should compel Plaintiff's claims to individual, binding arbitration, strike any and all class claims, and stay the instant court proceedings pending the outcome of the arbitration.

Dated: May 13, 2026

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Elizabeth T. Ferguson*

Nathan K. Low
Elizabeth T. Ferguson
Phil N. Bui
Jonathan G. Chang

Attorneys for Defendant
WAYFAIR LLC