**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ED JOSEPH KORPIE, an individual and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>WAYFAIR, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br>Defendants. | Case No. 2:26-cv-00024-SPG-E<br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [ECF NO. 16]** |

Before the Court is the Motion to Compel Arbitration, (ECF No. 16 ("Motion")), filed by Defendant Wayfair, LLC ("Defendant"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Ed Joseph Korpie ("Plaintiff") initiated this action on November 5, 2025, in Los Angeles County Superior Court. (ECF No. 1-4 ("Complaint") at 3). In his Complaint, Plaintiff alleges that he was employed by Defendant from approximately

March 2025 through June 2025. (*Id.* ¶ 2). Plaintiff alleges that Defendant engaged in numerous California Labor Code violations, including (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to timely pay wages; (8) failure to indemnify; (9) violation of quota laws; and (10) unfair competition. (*Id.* at 15-31). Plaintiff seeks to represent a class of Defendant's current and former non-exempt employees within the State of California during the four years preceding the filing of the Complaint. (*Id.* ¶ 33).

Defendant removed the case to this Court on January 2, 2026, (ECF No. 1), and filed the instant Motion on March 27, 2026, seeking to compel arbitration of Plaintiff's claims, (Mot.). Accompanying the Motion, Defendant filed supporting declarations from Valerie Bonilla, a Manager, Talent Business Partner at Wayfair, (ECF No. 16-6 ("Bonilla Declaration")), and Srinivasa Naidu Chikkala, a Senior Manager, Human Resources Information Systems at Wayfair, (ECF No. 16-7 ("Chikkala Declaration")). The Motion is also accompanied by a request for judicial notice of three documents. (ECF No. 16-2 ("RJN")). Plaintiff filed an opposition to the Motion on April 24, 2026, (ECF No. 26 ("Opposition")), which is accompanied by a declaration from Plaintiff, (ECF No. 26-1 ("Plaintiff's Declaration")). Separately, Plaintiff filed objections to the RJN and the Chikkala and Bonilla Declarations. (ECF No. 27 ("Objections")). On May 13, 2026, Defendant filed a reply in support of the Motion, (ECF No. 28 ("Reply")), accompanied by supplemental declarations from Bonilla and Chikkala, (ECF No. 28-1 ("Bonilla Supplemental Declaration"); ECF No. 28-2 ("Chikkala Supplemental Declaration")). Plaintiff filed additional objections to the supplemental declarations, (ECF No. 29), and Defendant responded and raised its own objections to Plaintiff's declaration, (ECF Nos. 31, 32, 33).

**B. Formation of the Arbitration Agreement**

To support its argument that Plaintiff signed an arbitration agreement, Defendant puts forth the Bonilla and Chikkala Declarations and supporting exhibits. In her

Declaration, Bonilla attests that she is responsible for managing human resources functions for Defendant and is familiar with Defendant's business operations and records. (Bonilla Decl. ¶ 2). She states that all of Defendant's new U.S. employees participate in onboarding activities within their first two weeks, including trainings, payroll paperwork, and sessions to review and sign required policies and agreements. (*Id.* ¶ 6). As part of the onboarding process, all new employees are required to access an onboarding module entitled "Wayfair Employee Document Acknowledgements." (*Id.* ¶ 7). This module displays a hyperlink to the Voluntary and Mutual Arbitration Agreement (the "Arbitration Agreement" or the "Agreement") and contains a separate affirmative acknowledgement for those new hires who elect to agree to the Arbitration Agreement. (*Id.*). Bonilla states that employees in California receive these documents electronically via Workday and are given opportunities to review the documents during onboarding. (*Id.* ¶ 8). Bonilla further states that Defendant does not require employees to sign the Arbitration Agreement within any specific time period and that whether a California employee chooses to sign the Arbitration Agreement has no impact on their employment. (*Id.* ¶¶ 9-10).

In his Declaration, Chikkala attests that he is responsible for building and managing modules in the Workday program, which are used for employee onboarding. (*Id.* ¶ 2). He states that employees use Okta, Defendant's employee application program, to access Workday modules during onboarding. (*Id.* ¶ 4). Employees are issued a username and temporary password for Okta and, upon login, are prompted to reset the password. (*Id.*). Defendant has no way of accessing this password, and employees who forget their password must manually reset the password through Defendant's IT Help Desk. (*Id.* ¶ 5). In his Supplemental Declaration, Chikkala further attests that employees are required to set up multifactor authentication for their Okta profiles. (Chikkala Supp. Decl. ¶ 3). Once the profile is set up, an employee can log into Workday, which automatically generates a unique employee identification number permanently linked to that employee. (*Id.* ¶ 4). Chikkala otherwise describes the same onboarding process as Bonilla, including that all

employees are required to access the "Wayfair Employee Document Acknowledgements" module in Workday. (Chikkala Decl. ¶ 6).

Defendant provides a screenshot of this module, which appears to include hyperlinks to various documents, including the Arbitration Agreement. (ECF No. 16-8). The module includes instructions to review the Arbitration Agreement and, once complete, to check the "I Agree" box. (*Id.*). Above the "I Agree" box, the module includes a statement that, "by signing below, I acknowledge that [1] I have carefully read this Agreement, understood the terms of this Agreement, and am entering into this Agreement knowingly and voluntarily; [2] I am not relying on any promises or representations by the Company except those contained in this Agreement; [3] I am knowingly and voluntarily giving up the right to have Covered Claims decided by a court or jury; and [4] I have been given the opportunity to discuss this Agreement with my own attorney if I wish to do so." (*Id.*).

Chikkala states that when an employee clicks the box next to the words "I Agree," the Workday system automatically records the date and time that the employee clicked the box and the name of the associated document. (Chikkala Decl. ¶ 10). Chikkala attests that Defendant's electronic personnel file for Plaintiff shows that Plaintiff first logged into his Okta account at 2:46 p.m. EDT on March 26, 2025, at which time he updated his password and set up multifactor authentication. (*Id.* ¶ 6); *see* (ECF No. 28-3). Plaintiff then logged into Workday at 2:57 p.m. and was assigned a unique employee ID number. (Chikkala Supp. Decl. ¶ 7); *see* (ECF No. 28-4). Plaintiff finally reviewed and electronically signed the Arbitration Agreement by checking the "I Agree" box on March 26, 2025, at 3:35 p.m. EDT. (*Id.* ¶ 11). Defendant includes a copy of this file, which shows Plaintiff's name and unique Workday employee identification number and indicates that Plaintiff agreed to the Arbitration Agreement on March 26, 2025. (ECF No. 16-10). Chikkala attests that he is familiar with Defendant's procedures for maintaining employee records, and that this file has been securely kept and maintained in accordance with those procedures. (Chikkala Decl. ¶¶ 2, 11).

For his part, Plaintiff attests that he started working for Defendant on March 26, 2025, and was required to attend an orientation with three other employees. (Plaintiff's Decl. ¶ 2). He was given a laptop, and a Wayfair employee directed him to complete various onboarding documents. (*Id.*). Plaintiff states that he was not allowed to go at his own pace and was not given the option to skip or opt-out of any section. (*Id.*). Plaintiff was required to provide his personal information and set up work-related systems and accounts, including setting a username and password to log in and sign up for shifts. (*Id.* ¶ 3). In total, the onboarding lasted about five-and-a-half hours. (*Id.* ¶ 4). Plaintiff states that he was not told during onboarding about the existence of an arbitration agreement or that he could review the agreement on his own time or opt out of the agreement. (*Id.* ¶ 5). To the contrary, the Wayfair employee overseeing the orientation said that all sections had to be completed, and she required Plaintiff to complete the forms at her pace. (*Id.*). Plaintiff states that he has now reviewed the Arbitration Agreement and does not recall reviewing it as part of onboarding or clicking the "I Agree" checkbox. (*Id.* ¶ 6).

**C. The Arbitration Agreement**

Defendant also provides a copy of the Arbitration Agreement. (ECF No. 16-9 ("Arbitration Agreement")). In relevant part, the Arbitration Agreement provides:

> Except as expressly set forth in the section, "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that I may have against Wayfair LLC ("Wayfair") and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me . . . arising out of and/or directly or indirectly related to my employment with the Company, and/or the terms and conditions of my employment with the Company, and/or termination of my employment with the Company ("Covered Claims"), are subject to individual arbitration pursuant to the terms of this Voluntary and Mutual Arbitration Agreement ("Agreement") and will be resolved by arbitration and NOT by a court or jury. The Parties hereby forever waive and give up the right to have a judge or a jury decide any Covered Claims.

(*Id.* at 2). The Arbitration Agreement further provides that "[n]o Covered Claims may be initiated or maintained on a class action, collective action, representative action, or mass filing basis, either in court or arbitration." (*Id.*). The Arbitration Agreement "survives the termination" of the employee and "remains in full force and effect" in the event the employee is later rehired. (*Id.* at 6).

Under the Arbitration Agreement, before making a demand for arbitration, the aggrieved party must first provide a written notice to the other party, containing a detailed description of the nature and basis of the dispute. (*Id.* at 4). The parties must then meet and attempt to resolve the dispute informally. (*Id.*). If a dispute is not resolved within 60 days after receipt of the written notice, either party may initiate arbitration. (*Id.*).

Finally, the Arbitration Agreement requires the parties to maintain the confidentiality of the arbitration proceeding and the award, "including all disclosures in discovery, submissions to the arbitrator, the hearing, and the contents of the arbitrator's award." (*Id.* at 6). However, the confidentiality provision does not "prevent either Party from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding" or from seeking to enforce or vacate an arbitration award in court. (*Id.*).

## II. LEGAL STANDARD

The Federal Arbitration Act (the "Act") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). If an agreement is valid and covers the dispute at issue, "then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Act reflects a "policy favoring arbitration" that aims, in light of "the judiciary's longstanding refusal to enforce agreements to arbitrate," to place arbitration agreements "upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citation omitted). "By its terms, the Act leaves no place for the exercise of discretion by a district

court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

A court's role under the Act is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. When evaluating whether a party is bound by an arbitration agreement, federal courts "'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Accordingly, an arbitration agreement may be unenforceable if "generally applicable contract defenses, such as fraud, duress, or unconscionability" apply. *AT&T Mobility LLC*, 563 U.S. at 339 (citation omitted).

## III. REQUEST FOR JUDICIAL NOTICE

As an initial matter, Defendant requests that the Court take judicial notice of three documents: (1) a copy of the Employment Rules and Procedures issued by the National Arbitration and Mediation Services ("NAMS"); (2) a copy of the Employment/Workplace Arbitration Rules and Mediation Procedures issued by the American Arbitration Association ("AAA"); and (3) a copy of an October 8, 2025, Order Granting Motion to Compel Arbitration and Dismiss Complaint issued in *Cornell v. Wayfair, LLC*, Case No. ESX-L-004719-25 (N.J. Super. Ct. Oct. 8, 2025). (RJN at 2). Defendant argues that the arbitration rules and court order are matters of public record not reasonably subject to dispute. (*Id.*). In his Objections, Plaintiff argues that the Court should not take judicial notice of the court order in *Cornell* because the decision is not relevant to any issues in dispute in this Motion. (Objections at 6).

Under Federal Rule of Evidence 201, courts may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks and citation omitted). A court, however, may not "take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

As to the arbitration rules, the Court agrees that these are matters of public record, subject to judicial notice. In the absence of any opposition, the Court will take judicial notice of these documents. *See, e.g.*, *Chavarria v. Ralphs Grocer Co.*, 812 F. Supp. 2d 1079, 1087 n.8 (C.D. Cal. 2011) (taking notice of AAA arbitration rules). As to the order in *Cornell*, however, while the document is a court record, ordinarily subject to judicial notice, the Court agrees with Plaintiff that there is no reason for the Court to take notice of the order here. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of records that "are not relevant to the resolution of this appeal"). Defendant does not cite to *Cornell* in its Motion, and the order itself contains no discussion of the facts or law underlying its decision to compel arbitration. *See* (ECF No. 16-5). Accordingly, Defendant has not shown that there is any reason for the Court to take judicial notice of this document.

## IV. DISCUSSION

### A. Existence of Arbitration Agreement

As the party seeking to enforce an arbitration agreement, Defendant bears the burden of proving by a preponderance of the evidence that a contract to arbitrate was formed. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). To meet this burden, Defendant submits the exhibits and declarations discussed above, including an excerpt

from Plaintiff's personnel file purportedly showing that Plaintiff agreed to the Arbitration Agreement on March 26, 2025. *See* (ECF No. 16-10). Defendant argues that, because this input is associated with Plaintiff's unique username, password, multifactor authentication, and employee identification number, the electronic signature is valid and legally binding on Plaintiff under the California Uniform Electronic Transactions Act ("UETA"). (Mot. at 12-13; Reply at 7-8).

In Opposition, Plaintiff argues that Defendant has failed to connect the purported agreement to him because the Arbitration Agreement lacks a signature block or any reference to Plaintiff, and the personnel file excerpt does not identify any associated username, employee credentials, or email address. (Opp. at 11-12). Plaintiff argues that, because Chikkala and Bonilla were not present during his onboarding, neither one has sufficient personal knowledge of whether he signed the Agreement. (*Id.* at 11). Plaintiff also argues that Defendant has not set forth a sufficient foundation to authenticate the Agreement or to demonstrate how Chikkala could know that Plaintiff checked the "I Agree" box. (*Id.* at 12). Plaintiff objects to portions of the Chikkala Declaration, Supplemental Declaration, and supporting exhibits on the same grounds. (Objections at 2-5; ECF No. 29 at 2-6).

In assessing the existence of an agreement to arbitrate, courts in this Circuit apply a "summary judgment standard . . . because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (internal quotation marks and citation omitted). "As a result, a court is not authorized to dispose of a motion to compel arbitration until after material factual disputes have been resolved." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) (internal quotation marks, citation, and alterations omitted). "Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal.

2004). In making this determination, the Court may consider "the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 932 (S.D. Cal. 2022) (citation omitted). "Because the FAA does not alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them), state law governs this inquiry." *Knapke*, 38 F.4th at 831 (internal quotation marks and citation omitted).

Applying a summary judgment standard, the Court finds that there is no material dispute of fact as to whether Plaintiff signed the Arbitration Agreement. Under California law, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person." Cal. Civ. Code § 1633.9(a). "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* Here, Chikkala attests that Plaintiff was assigned unique login information as part of his onboarding process. *See* (Chikkala Decl. ¶ 4). After Plaintiff initially logged in, he was prompted to change his password, and, once he did so, Defendant had no way of retrieving this password. (*Id.* ¶ 5). Defendant's Okta system also required Plaintiff to set up multifactor authentication for his account, which required use of a telephone number that he selected. (Chikkala Supp. Decl. ¶ 3). Defendant's records reflect that Plaintiff first logged into Okta at 2:46 p.m. EDT on March 26, 2025, at which time he reset his password and set up multifactor authentication using his personal cellphone. *See* (ECF No. 28-3). Defendant's records further reflect that Plaintiff first logged into the Workday system at 2:57 p.m. and was assigned a unique employee ID number. (Chikkala Supp. Decl. ¶ 7; ECF No. 28-4). Finally, Defendant's records reflect that an individual associated with Plaintiff's unique username and employee ID number clicked the "I Agree" box for the Arbitration Agreement on March 26, 2025, at 3:35 p.m. (ECF No. 16-10). Chikkala attests that Plaintiff's personnel file has been securely kept and preserved in the usual course of Defendant's business. (Chikkala Decl. ¶ 11).

In response to this evidence, Plaintiff offers no contrary evidence sufficient to create a material dispute. Plaintiff admits that, on March 26, 2025, he was provided with a laptop as part of his orientation and was told to complete various onboarding documents. (Plaintiff's Decl. ¶ 2). He further admits that he set up work-related systems and accounts, including "a username and password to login and sign up for shifts." (*Id.* ¶ 3). Plaintiff does not assert that any other individual ever had access to his employee account, nor does he raise any challenge to the efficacy of Defendant's security procedures. Plaintiff offers no explanation or evidence to rebut Defendant's showing that a user with Plaintiff's unique username, password, multifactor authentication, and employee ID number signed the Arbitration Agreement. On this record, the Court finds no material dispute that Plaintiff was the only individual who could have accessed his employee account to complete onboarding documents. Plaintiff's bare assertion that he "do[es] not recall" reviewing or signing the Arbitration Agreement, (*id.* ¶ 6), is not sufficient to create a material dispute of fact. *See Manning v. Uber Techs. Inc.*, 358 F. Supp. 3d 962, 965 (N.D. Cal. 2019) (collecting cases for the proposition that, where the defendant produces a signed agreement, "the plaintiff's testimony that he or she did not recall signing the agreement was not sufficient to create a dispute warranting discovery"); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

While Plaintiff objects to the Chikkala and Bonilla declarations as lacking sufficient personal knowledge and foundation, the Court finds the declarations to be admissible. Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[T]he requirement of personal knowledge imposes only a minimal burden on a witness." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotation marks and citation omitted). Both Bonilla and Chikkala are employed by

Defendant in human resources-related positions, and Chikkala is specifically responsible for building and managing modules in the Workday program. (Bonilla Decl. ¶ 2; Chikkala Decl. ¶ 2). Based on their roles, the Court can infer that Bonilla and Chikkala have the means and knowledge to access Plaintiff's personnel file and attest to Defendant's onboarding procedures, platforms, and security processes. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."). While Plaintiff argues that the declarants were not present at the time of the alleged signing, nothing in the Declarations implies that the statements are based on personally witnessing Plaintiff sign the Arbitration Agreement, and this type of personal knowledge is not required for the declarants to attest to the information provided.

Plaintiff also argues that the Supplemental Chikkala Declaration should not be considered because it constitutes "improper new reply evidence." (ECF No. 29 at 2-6). While it is generally true that "new" evidence submitted for the first time in a reply brief will not be considered, evidence "submitted in direct response to proof adduced in opposition to a motion . . . is not 'new.'" *Zkey Invs., LLC v. Facebook Inc.*, 225 F. Supp. 3d 1147, 1158 (CD. Cal. 2016). Here, the information supplied in the Supplemental Chikkala Declaration was directly responsive to Plaintiff's arguments raised in his Opposition, Declaration, and Objections. Specifically, Plaintiff asserted that he did not recall signing the Arbitration Agreement and argued that Defendant's evidence lacked "Plaintiff's email address, username, IP address, metadata, or any other objective technical evidence linking the electronic signature to Plaintiff." (Opp. at 5); *see also* (Objections at 4).

Finally, Plaintiff cites to *Ruiz v. Moss Brothers Auto Group, Inc.* for the proposition that an agreement with "an electronic signature on it in the name of [plaintiff], and a date and time stamp for the signature, [is] insufficient to support a finding that the electronic signature was, in fact, 'the act of' [plaintiff]." 232 Cal. App. 4th 836, 844 (2014). However, *Ruiz* is easily distinguishable from the facts here. As the *Ruiz* court explained, the defendant "did not explain that an electronic signature in the name of [the plaintiff]

could only have been placed on the 2011 agreement . . . by a person using [the plaintiff's] 'unique login ID and password'; that the date and time printed next to the electronic signature indicated the date and time the electronic signature was made; that all [] employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements; and the electronic signature on the 2011 agreement was, therefore, apparently made by [the plaintiff]." *Id.* Instead, the defendant "only offered her unsupported assertion that [the plaintiff] was the person who electronically signed the [] agreement." *Id.* Here, by contrast, Defendant *has* explained that an electronic signature could only have been placed on the Arbitration Agreement through use of Plaintiff's unique username, password, multifactor authentication, and employee ID number. Accordingly, the Court finds no material dispute of fact that Plaintiff is the person who signed the Arbitration Agreement.

**B. Unconscionability**

Plaintiff also argues that the Court should refuse to enforce the Arbitration Agreement on grounds of unconscionability. "Whether an arbitration provision is unconscionable is governed by state contract law." *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1085 (9th Cir. 2010), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23, 41-42 (2017). Under California law, "unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and citation omitted). Both procedural and substantive unconscionability must be present "in order for a court to exercise its discretion to refuse to enforce a contract or clause." *Id.* (citation omitted). However, procedural and substantive unconscionability need not be present in the same degree; instead, they are evaluated on a "sliding scale," such that "[t]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

1. Procedural Unconscionability

The procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion," meaning that it is "standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *OTO, LLC v. Kho* ("*Kho*"), 8 Cal. 5th 111, 126 (2019) (internal quotation marks and citations omitted). "Arbitration contracts imposed as a condition of employment are typically adhesive." *Id.* Such contracts are "subject to scrutiny because they are not the result of freedom or equality of bargaining." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024) (internal quotation marks and citation omitted); *see also Armendariz*, 24 Cal. 4th at 115 (recognizing that the economic pressure in the employment context "may be particularly acute" given that "the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement").

The Arbitration Agreement here qualifies as a contract of adhesion. The Arbitration Agreement was standardized, presented in a pre-printed format in the Workday program, and offered to Plaintiff on a take-it-or-leave it basis as part of his employee onboarding. While Defendant asserts that Plaintiff was under no obligation to accept the Arbitration Agreement as a condition of his employment, (Bonilla Decl. ¶ 10), there is no evidence in the record that this was ever communicated to Plaintiff. Nothing in the Arbitration Agreement or in the screenshot of the Workday module provided by Defendant states that the Arbitration Agreement was optional, and the Arbitration Agreement was presented to Plaintiff alongside other mandatory onboarding materials. *See* (ECF No. 16-8; Arbitration Agreement). Plaintiff—the only declarant present during his onboarding—states that he was not told that he could opt-out of any section. (Plaintiff's Decl. ¶ 2). Accordingly, the Arbitration Agreement is a contract of adhesion.

By itself, however, a contract of adhesion "indicates only a low degree of procedural unconscionability." *Ramirez*, 16 Cal. 5th at 494. "The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer

scrutiny of its overall fairness is required." *Kho*, 8 Cal. 5th at 126. "Oppression occurs where a contract involves lack of negotiation and meaningful choice," and circumstances pointing to oppression include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Id.* at 126-27 (internal quotation marks, emphasis, and citations omitted). Surprise, meanwhile, occurs "where the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* at 126 (citation omitted).

In his Opposition, Plaintiff argues that the Arbitration Agreement was the product of oppression because he lacked equal bargaining power, was not given the opportunity to proceed at his own pace, and was not permitted to consult counsel. (Opp. at 15-16). Plaintiff also argues that the Agreement was a surprise because it appeared as part of a multi-document onboarding, during which he was not informed of the agreement or told to stop and evaluate it separately. (*Id.* at 17). Plaintiff also argues that surprise was heightened because the Agreement incorporates outside arbitration rules that were not attached. (*Id.*).

The Court finds that the Agreement was not the product of any additional oppression beyond that inherent to any contract of adhesion. While Plaintiff states that he did not feel he could proceed at his own pace, he does not otherwise identify any pressure exerted on him to sign the Agreement. The Agreement itself is just over five pages, and Plaintiff does not indicate that he lacked the education or experience to understand the Agreement. While Plaintiff states that he was not permitted to consult counsel, the acknowledgement that Plaintiff signed explicitly states that "I have been given the opportunity to discuss this Agreement with my own attorney if I wish to do so" immediately above the "I Agree" box.

(ECF No. 16-8). Weighing the factors identified in *Kho*, Plaintiff has not shown that the Agreement was a product of oppression.

As to surprise, while the Agreement was presented alongside several other onboarding documents, it was presented as a standalone document, clearly labeled as a "Voluntary and Mutual Arbitration Agreement." (*Id.*). The Agreement itself is just over five pages, with the basic provisions set forth on the first page in bolded text. (Arbitration Agreement). In clicking "I Agree," Plaintiff explicitly acknowledged that he was "knowingly and voluntarily giving up the right to have Covered Claims decided by a court or jury." (ECF No. 16-8). Thus, nothing about the nature of the Agreement should have been a surprise to Plaintiff. While it is true that the Agreement incorporates outside arbitration rules that were not included in the Agreement, this does not render the agreement procedurally unconscionable. *See, e.g.*, *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) ("[T]he failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability.").

Accordingly, the Court concludes that the Agreement is a contract of adhesion but does not otherwise find oppression or surprise. Thus, Plaintiff has demonstrated "only a low degree of procedural unconscionability." *Ramirez*, 16 Cal. 5th at 494.

2. Substantive Unconscionability

Substantive unconscionability looks "beyond the circumstances of contract formation and considers the fairness of an agreement's actual terms." *Id.* at 493 (internal quotation marks and citation omitted). The California Supreme Court has variously described an unconscionable agreement as being "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (internal quotation marks and citations omitted). "All of these formulations point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Id.* (internal quotation marks and citation omitted).

Plaintiff argues that the Agreement is substantively unconscionable because (1) it extends arbitration rights to Defendant's non-signatory affiliates without any comparable reciprocal benefit to Plaintiff; (2) the mandatory pre-dispute notice gives Defendant an unfair "free peek" at Plaintiff's claims before arbitration; (3) the confidentiality provision is overbroad and favors Defendant as a repeat player; and (4) the Agreement's survival provision is indefinite and overbroad. The Court will consider each of these arguments in turn.

*a) Mutuality*

Plaintiff first argues that the Agreement is lacking in mutuality because it extends arbitration rights to Defendant's affiliates without providing any reciprocal benefit. The Agreement applies to all disputes that Plaintiff may have "against Wayfair LLC ("Wayfair") and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me." (Arbitration Agreement at 2). Relying on *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024), Plaintiff argues that this provision is unconscionable because it provides additional benefits to third parties affiliated with Defendant, while Plaintiff has no realistic ability to compel arbitration against these third parties. (Opp. at 19).

In *Cook*, the California Court of Appeals affirmed the trial court's finding of unconscionability in part due to lack of mutuality in the arbitration provision. *Cook*, 102 Cal. App. 5th at 326. While the agreement required the plaintiff to arbitrate "any and all claims she may have against [the defendant] 'or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise,'" it did not require these "'related entities' to arbitrate their claims against [the plaintiff]." *Id.* The court found that this portion of the agreement was unconscionable because it conferred "a benefit on [the defendant] and its broadly defined 'related entities' that is not mutually afforded to [the plaintiff]" without any explanation of "why [the plaintiff] should be required to give up the

ability to ever bring claims in court against [the defendant's employees] that are unrelated to [the defendant] or her employment." *Id.* at 327.

The Court finds *Cook* to be distinguishable from the facts here. First, unlike in *Cook*, where the arbitration agreement required arbitration of "any and all claims" against the defendant and its related entities, including claims unrelated to the plaintiff's employment, *id.* at 326-27, the Arbitration Agreement here applies only to claims "arising out of and/or directly or indirectly related to" Plaintiff's employment or termination, (ECF No. Arbitration Agreement at 2). Thus, the *Cook* court's concerns about unfairly requiring the employee to give up the right to bring claims against a third party "that are unrelated to [the defendant] or [the plaintiff's] employment" are not present here. *Cook*, 102 Cal. App. 5th at 327. Second, the Arbitration Agreement here permits arbitration not only of Plaintiff's covered claims against Defendant's related entities, but also the related entities' covered claims against Plaintiff. *See* (Arbitration Agreement at 2 (requiring arbitration of claims "that the Company may have against me" and defining "Company" to include Defendant's related entities)). Thus, there is no apparent lack of mutuality, in that Plaintiff is permitted to compel arbitration against the same entities that can compel arbitration against him. Under these circumstances, the Court finds that the provision in the Arbitration Agreement is not unconscionable.[1]

[1] The Court notes that *Cook* includes discussion of the difference in ease of enforceability of an agreement "against a nonsignatory" and "for a nonsignatory," *Cook*, 102 Cal. App. 5th at 327, which could be read to imply that *any* arbitration provision conferring benefits on third-party affiliates of only one party is unconscionable, even where the agreement permits arbitration against those affiliates. However, absent citation to any case so holding, the Court is not inclined to take this expansive view of *Cook*. Moreover, even assuming a California court would rule this way, for the same reasons discussed below in Section IV.B.3, the Court finds that the third-party arbitration provision would be severable from the rest of the Agreement because the central purpose of the contract—compelling arbitration of employment-related disputes—is not tainted with illegality, and any unconscionability could be cured "purely through severance or restriction of its terms." *Ramirez*, 16 Cal. 5th at 516. This is particularly true here given that this dispute does not involve any of Defendant's related entities.

*b) Pre-Dispute Notice*

Plaintiff next challenges the provisions in the Arbitration Agreement requiring the parties to engage in certain "pre-dispute procedures" before bringing a case to arbitration. The Agreement requires the parties to first pursue informal resolution of the dispute by providing written notice of the nature of the claims, meeting via telephone or video conference, and waiting at least 60 days before bringing an arbitration demand. (Arbitration Agreement at 4). Citing *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004), and *Navas v. Fresh Venture Foods, LLC*, 85 Cal. App. 5th 626 (2022), Plaintiff argues that these provisions are unconscionable because they give Defendant a "free peek" at Plaintiff's claims. (Mot. at 20). Plaintiff argues that, while the Agreement is written in bilateral terms, its practical effect is unfair because Defendant is a repeat player and has access to all the relevant documents and parties. (*Id.*).

Contrary to Plaintiff's arguments, an arbitration provision requiring exhaustion of pre-dispute procedures is not per se unconscionable. Where, as here, the Arbitration Agreement contains a "mutual obligation to arbitrate," a provision requiring "that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013). Here, like in *Serpa*, the pre-dispute procedures are not unconscionable because they apply equally to disputes brought by either party, as does the Agreement as a whole.

Plaintiff's cited cases are easily distinguished on this basis. First, in *Nyulassy*, while the court found a provision requiring the plaintiff "to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration" to be substantively unconscionable, it did so solely because of the "unilateral nature of the arbitration agreement" as a whole. *Nyulassy*, 120 Cal. App. 4th at 1282-83; *see Serpa*, 215 Cal. App. 4th at 710 (distinguishing *Nyalussy* because "the court found [the provision] unacceptable primarily because it was yet another employer-based mechanism in an agreement permeated by unilateral provisions favoring the employer"). The *Nyulassy* court was clear that, absent the other unilateral provisions, the

pre-dispute resolution procedures would present "a laudable mechanism for resolving employment disputes informally." *Nyulassy*, 120 Cal. App. 4th at 1282. *Navas*, meanwhile, found a pre-dispute resolution process to be unconscionable because the process was "not described" such that "employees do not know what they are agreeing to" and the employer would not be required "to follow any defined procedure to limit its discretion." *Navas*, 85 Cal. App. 5th at 636. Here, by contrast, the pre-dispute procedures are clearly set forth in the Agreement, requiring the parties to make a written notice of the claims and engage in an informal meeting via telephone or video conference in an effort to resolve the dispute informally. (Arbitration Agreement at 4). Accordingly, the Court does not find these provisions to be unconscionable.

*c) Confidentiality Provision*

Plaintiff next challenges the confidentiality provision of the Arbitration Agreement, which requires the parties to "maintain the confidential nature of the arbitration proceeding and the award, including all disclosures in discovery, submissions to the arbitrator, the hearing, and the contents of the arbitrator's award." (Arbitration Agreement at 6). Plaintiff argues that this provision is unconscionable because it effectively provides one-sided benefits to Defendant due to its status as a repeat player. (Opp. at 21-22). Plaintiff argues that the limited exception for communications with witnesses does not cure the problem because its scope is ambiguous and because it does not address the information asymmetry with respect to prior proceedings and awards. (*Id.* at 22). Plaintiff acknowledges that such agreements are not per se unconscionable but argues that Defendant has identified no commercial need for requiring confidentiality. (*Id.* at 23).

Under California law, confidentiality provisions are not per se unconscionable, at least when based on a "legitimate commercial need." *Baltazar*, 62 Cal. 4th at 1250. However, several California courts have found such provisions unconscionable where there is "no commercial need for requiring employment-related proceedings to remain confidential." *Hasty v. Am. Auto. Ass'n*, 98 Cal. App. 5th 1041, 1062 (2023); *see also Murrey v. Superior Court*, 87 Cal. App. 5th 1223, 1254 (2023) (finding confidentiality

provision unconscionable where employer identified no "commercial need for the proceedings to remain confidential").

Here, Defendant has identified no commercial need—such as a need "to protect 'valuable trade secrets and proprietary and confidential information' from public disclosure" *Baltazar*, 62 Cal. 4th at 1250—that would justify keeping the proceedings confidential. Absent such a commercial justification, confidentiality provisions are disfavored because they "favor companies over individuals." *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003). Such provisions further bolster "the advantages inherent in being a repeat player" by depriving opponents of "access to precedent" and preventing "potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination." *Id.* at 1152. These provisions also operate to prevent plaintiffs from gathering supporting evidence for their claims, inhibit plaintiffs from informally contacting witnesses outside of discovery, increase costs by requiring formal depositions, and discourage potential plaintiffs from filing discrimination cases. *Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1066 (2018).

Defendant argues that there are no concerns here about an inability to gather discovery because the Arbitration Agreement carves out an exception for "communicating with witnesses to the extent necessary to assist in arbitrating the proceeding." (Arbitration Agreement at 6). However, while this provision may address some of the problems with confidentiality provisions, it does not address the Ninth Circuit's concern that such provisions unfairly bolster "the advantages inherent in being a repeat player." *Ting*, 319 F.3d at 1152; *see also Ramos*, 28 Cal. App. 5th at 1065 (finding that confidentiality provisions would place the employer "in a far superior legal posture by preventing plaintiffs from accessing precedent" and "prevent[ing] others from building cases" (internal quotation marks and citation omitted)). The confidentiality provision would also impose unwarranted restrictions on the ability to build discrimination claims. *See Ting*, 319 F.3d at 1152 ("[T]he unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct

or unlawful discrimination."); *Murrey*, 87 Cal. App. 5th at 1255 ("Future employees cannot take advantage of findings in past arbitrations or prove a pattern of discrimination and/or retaliation."). While Plaintiff here does not raise a discrimination claim, the Agreement would apply equally to such claims, *see* (Arbitration Agreement at 2), and the unconscionability of an arbitration agreement is measured not by reference to the plaintiff's specific claims, but by looking to "general factors" present at the time of contract formation, *Ramirez*, 16 Cal. 5th at 506. Accordingly, the confidentiality provision is substantively unconscionable.

*d) Survival Provision*

Lastly, Plaintiff challenges the survival provision of the Agreement, which states that "[t]his Agreement survives the termination of my employment (or expiration of any benefit of my employment) with the Company," and that the agreement will remain in full force in the event Plaintiff is later re-employed by Defendant. (Arbitration Agreement at 6). Citing *Cook*, Plaintiff argues that this provision is unconscionable because it continues to bind Plaintiff beyond the termination of his employment. (Opp. at 23). Plaintiff argues that this problem is magnified because the Agreement is already overbroad in terms of who it covers and what claims it reaches. (*Id.* at 24).

The Court disagrees. A clause providing that an arbitration agreement will survive the employee's termination is not, by itself, unconscionable. If it were, no arbitration agreement could ever apply to claims related to an employee's termination, and an employee could avoid arbitration simply by quitting before bringing any claims. *See Connell v. ByteDance, Inc.*, No. 24-cv-07859-NC, 2025 WL 1828472, at *25 (N.D. Cal. July 1, 2025) ("[I]t is hard to imagine such provisions are unconscionable when California courts routinely enforce them."); *see also O'Shaughnessy v. AGI Ground, Inc.*, No. 5:25-cv-02502-AB-KS, 2026 WL 413582, at *6 (C.D. Cal. Jan. 7, 2026) ("California courts have consistently upheld survival clauses that merely preserve the parties' obligation to arbitrate claims tied to the employment relationship." (citing *Serpa*, 215 Cal. App. 4th at 705-711)).

*Cook* does not hold otherwise. There, the court found unconscionable a provision that the agreement "shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University." *Cook*, 102 Cal. App. 5th at 325. The court found that this would result in the agreement surviving "indefinitely following [the plaintiff's] termination." *Id.* The court rejected application of the general rule that "contracts that do not specify a term of duration are terminable at will" after a reasonable period because the arbitration agreement *did* include "an express term of duration" by specifically setting forth the criteria for termination of the agreement. *Id.* at 326. Here, by contrast, the Agreement includes no express provision of duration or termination, such that the general rule deeming contracts terminable at will after a reasonable period of time applies. Moreover, in concluding that the agreement's indefinite end point was unconscionable, the *Cook* court "appear[ed] to consider the impact of the duration provision in combination with other overbroad provisions in the arbitration agreement." *Connell*, 2025 WL 1828472, at *25. Here, because the Arbitration Agreement covers only claims related to Plaintiff's employment or termination, the Agreement is not "indefinite" in the same way because it will last only as long as the statute of limitations for any claims Plaintiff had at the time of his termination. *See Kittrell v. USA Debusk LLC*, No. 25-cv-02432-MMC, 2025 WL 3049883, at *6 (N.D. Cal. Oct. 31, 2025) (distinguishing *Cook* and holding that an arbitration agreement "cannot be characterized as indefinite in duration, as its coverage is limited to issues relating to [the plaintiff's] employment, which would end on a given date"). Accordingly, the Court does not find this provision to be unconscionable.

3. <u>Severability</u>

Having found some degree of both procedural and substantive unconscionability, the Court must now determine whether to cure the Agreement by severing the unenforceable provision. "If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract;

(2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results." *Ramirez*, 16 Cal. 5th at 513. The "overarching inquiry is whether the interests of justice would be furthered by severance." *Armendariz*, 24 Cal. 4th at 124 (internal quotation marks, ellipses, and citation omitted). "At the outset, a court should ask whether the central purpose of the contract is tainted with illegality." *Ramirez*, 16 Cal. 5th at 516 (internal quotation marks and citation omitted). If so, the contract is unenforceable. If not, the court should ask whether the contract's unconscionability "*can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id.* If no reformation is required, then severance is the "preferred course for provisions that are collateral to the agreement's main purpose." *Id.* If reformation is required, then the contract is unenforceable, since "[c]ourts cannot rewrite agreements and impose terms to which neither party has agreed." *Id.* (internal quotation marks and citation omitted).

Applying this rule, the Court finds that severance of the unconscionable term is appropriate. First, the central purpose of the agreement is not tainted with illegality. The Court has identified only a single unconscionable provision regarding the confidentiality of arbitration proceedings. While the number of unconscionable provisions is not determinative, the presence of only a single unconscionable provision suggests that the agreement as a whole is not tainted. The sole unconscionable provision relates to the confidentiality of proceedings, not to the fairness of the forum itself. Further, the confidentiality provision already carves out an exception for gathering information from witnesses. Thus, while the agreement evinces a central purpose to require arbitration of disputes, it does not show a "systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124.

Second, the Agreement can be reformed by severing or restricting the offending provision without requiring augmentation. The confidentiality clause can simply be removed from the Agreement without affecting any of the other terms. Because the unconscionable provisions can be severed or restricted "without affecting the remainder of

the agreement," *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017), the Court will do so here. The arbitration agreement, excluding the severed provision, remains enforceable.

**C. Request to Stay and Strike Class Claims**

Finally, Defendant requests that the Court stay proceedings in this action pending arbitration and strike Plaintiff's class claims. Under 9 U.S.C. § 3, upon referring a claim to arbitration, courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, the Court will stay the instant case pending the outcome of arbitration.

As to the request to strike, "Congress has instructed that arbitration agreements . . . must be enforced as written." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018). Here, the parties' Agreement provides that "[n]o Covered Claims may be initiated or maintained on a class action, collective action, representative action, or mass filing basis, either in court or arbitration." (Arbitration Agreement at 2). Because the Court has found the Arbitration Agreement to be enforceable, the Court must enforce this provision and strike Plaintiff's class action claims.

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1. Plaintiff's claims shall be submitted to arbitration in accordance with the parties' Arbitration Agreement, as modified by this Order;
2. Plaintiff's class action claims are STRICKEN from the Complaint; and
3. This matter is STAYED pending the resolution of arbitration. The parties are ordered to file a joint status report with the Court every six (6) months, apprising the Court of the status of arbitrating Plaintiff's claims. The parties

must also promptly notify the Court once arbitration of Plaintiff's claims has concluded.

**IT IS SO ORDERED.**

DATED: June 18, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE